Eugene R. **FIDELL** et al., Plaintiffs,

v.

The **BOARD OF ELECTIONS OF** the **CITY OF NEW YORK** et al., **Defendants.**

No. 71 C 1577.

United States District Court, E. D. New York.

Argued May 5, 1972.

Decided June 1, 1972.

David N. Ellenhorn, New York City (Gerald A. Novack, Hannah Waldman, Kronish, Lieb, Shainswit, Weiner & Hellman, New York City, on the brief), for plaintiffs.

J. Kemp Hannon, Deputy County Atty., Nassau County, Mineola, N. Y. (Joseph Jaspan, County Atty., on the brief), for defendant Bd. of Elections of Nassau County.

Robert S. Hammer, Asst. Atty. Gen. of N. Y. (Louis J. Lefkowitz, Atty. Gen., Samuel A. Hirshowitz, First Asst. Atty. Gen., on the brief), for defendants Lomenzo and Lefkowitz.

Before HAYS, Circuit Judge, and BRUCHHAUSEN and JUDD, District Judges.

HAYS, Circuit Judge:

Plaintiffs, claiming to represent members of a class, seek a declaratory judgment and an injunction requiring defendants to provide for absentee ballots in the forthcoming primary in the State of New York. While New York permits absentee voting in general elections, see N.Y. Election Law § 117 et seq. (McKinney's Consol.Laws c. 17, 1964 and Supp.1971), it does not do so for primaries. Plaintiffs allege that they and other members of their class will be unable to vote in person in the June primary, and that New York's failure to provide absentee ballots denies them the equal protection of the laws and, as to certain of them, infringes the right to travel. It is also alleged that the New York law conflicts with the Voting Rights Act Amendments of 1970, 42 U. S.C. § 1973aa–1(c) and (d) (1970).

The plaintiffs moved for summary judgment. The Board of Elections of Nassau County and defendants Lefkowitz and Lomenzo moved to dismiss the complaint. Judge Bruchhausen granted defendants' alternative motion to convene a three-judge court.

The individual named plaintiffs are duly registered to vote in the State of New York. Plaintiff Fidell is on active duty with the United States Coast Guard and will be stationed in the vicinity of Washington, D.C. on the day of the primary election. Plaintiff Herman is a college student who will be pursuing her studies outside New York State on that date. Plaintiff McCleary is an air hostess who will be outside the state if her work schedule so requires, though that schedule has not yet been fixed for the period covering the primary election. Plaintiff Burton is incapacitated and physically unable to travel to a polling place. Plaintiff Common Cause is a non-profit corporation of the District of Columbia.[1]

1. According to the complaint,
    "[t]he central purpose of the organization is to increase participation of all citizens in the processes of government at the local, state and national levels in the United States. As a necessary means to that end, Common Cause engages in public education, lobbying and litigation in the public interest to remove barriers to voting . . . ."

The defendants assert, and plaintiffs do not deny, that last minute changes among the candidates as a result of litigation, frequently require that primary ballots be changed on the eve of the election. It also appears that a different ballot is required for each of the state's 12,750 election districts. Defendants urge that under these circumstances the authorization of absentee ballots would be impractical and at the very least would require an unjustifiably large amount of time, money and effort for printing and mailing.

We hold that the State of New York has demonstrated a rational basis for failing to provide for absentee balloting in primary elections, and that the existence of such a rational basis is a sufficient ground for dismissing the present complaint. As the Supreme Court said in Bullock v. Carter, 405 U.S. 134, 143, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972), "Of course, not every limitation or incidental burden on the exercise of voting rights is subject to a stringent standard of review." The cases applying such stringent standards as a compelling state interest and striking down state practices have involved exclusion from the ballot of a class of voters on grounds far different from those presented in the present case. Dunn v. Blumstein, 405 U.S. 330, 336–337, 92 S.Ct. 995, 999–1000, 31 L.Ed.2d 274 (1972) (durational residency requirement longer than thirty days); City of Phoenix, Ariz. v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L. Ed.2d 523 (1970) (only owners of realty allowed to vote for issues of general obligation bonds); Evans v. Cornman, 398 U.S. 419, 422, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970) (residents of federal enclave); Cipriano v. City of Houma, 395 U.S. 701, 704, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969) (only property taxpayers allowed to vote for issuance of revenue bonds); Kramer v. Union Free School Dist. No. 15, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969) (only owners or lessees of taxable realty, or parents or custodians of children in public schools, allowed to vote in school district elec-tions); Harper v. Virginia State Bd. of Elections, 383 U.S. 663, 670, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (poll tax must be "closely scrutinized"); Carrington v. Rash, 380 U.S. 89, 93, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965) (exclusion of servicemen who were not residents of state when they entered the service). See also Rosario v. Rockefeller, 458 F.2d 649, at 652 and n. 4 (2d Cir. April 7, 1972), cert. granted, 406 U.S. 957, 92 S. Ct. 2062, 32 L.Ed.2d 343 (1972) (statute upheld under compelling interest standard).

The only Supreme Court case dealing with absentee ballots is McDonald v. Board of Election Comm'rs, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969). *McDonald* involved a primary, id. at 804, 89 S.Ct. 1404, in which, pursuant to Illinois law, absentee ballots were furnished to certain classes of persons who could not be physically present at the polls, including

"(1) those who are absent from the county of their residence for any reason whatever; (2) those who are 'physically incapacitated,' so long as they present an affidavit to that effect from a licensed physician . . . ."

Id. at 803, 89 S.Ct. at 1406. The appellants, who were prisoners awaiting trial in the county of their residence, and who had not been convicted of any crime, were not covered by the statute. They had conceded in the court below that the legislature could have refused to provide absentee ballots altogether, McDonald v. Board of Election Comm'rs, 277 F.Supp. 14, 17 (N.D.Ill.1967) (three-judge court); they challenged the legislative classification that granted absentee ballots to those medically incapacitated but not to those "judicially" incapacitated, and to those incarcerated outside the county of their residence but not to those incarcerated within the county of their residence. 394 U.S. at 806, 89 S.Ct. 1404. The Supreme Court declined to apply the compelling interest standard in upholding the denial of absentee ballots to the appellants, saying,

"First, the distinctions made by Illinois' absentee provisions are not drawn on the basis of wealth or race. Secondly, there is nothing in the record to indicate that the Illinois statutory scheme has an impact on appellants' ability to exercise the fundamental right to vote. It is thus not the right to vote that is at stake here but a claimed right to receive absentee ballots. Despite appellants' claim to the contrary, the absentee statutes, which are designed to make voting more available to some groups who cannot easily get to the polls, do not themselves deny appellants the exercise of the franchise; nor, indeed, does Illinois' Election Code so operate as a whole, for the State's statutes specifically disenfranchise only those who have been convicted and sentenced, and not those similarly situated to appellants."

Id. at 807–808, 89 S.Ct. at 1408.

In *McDonald* the Court treated the provision of absentee ballots as a reform measure which served to extend the franchise to those who had previously been unable to exercise it. 394 U.S. at 809–811, 89 S.Ct. 1404. The Court twice referred to the Illinois scheme as "remedial," id. at 809, 811, 89 S.Ct. 1404 and noted that there were various classes of people in Illinois and other states who were not qualified to use absentee ballots. The Court upheld the statute by applying the principle that remedial legislation should not be invalidated merely because it does not cover all classes of persons who might benefit from it. See, e. g., Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Katzenbach v. Morgan, 384 U.S. 641, 657, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966).

■ While it is true as a general proposition that the right to vote in primaries receives the same constitutional protection as the right to vote in general elections, Smith v. Allwright, 321 U.S. 649, 660–662, 64 S.Ct. 757, 88 L.Ed. 987 (1944); United States v. Classic, 313 U.S. 299, 318, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941), it is also true that many states nominate candidates, or choose delegates to national nominating conventions, by means of caucuses or conventions at which, if there is indeed any provision at all for general participation, party members are required to be physically present in order to record their choices. In this context primaries are remedial devices that increase citizen participation in the candidate selection process. It is our view that when the legislature decides to employ the primary, it is not constitutionally required to do more than avoid arbitrary or invidious classifications.

■ Since providing for absentee balloting in primaries would be impractical and would require an inordinate amount of time, effort and expense, New York's failure to provide for such ballots must be held to be reasonably related to valid governmental interests and not to constitute a violation of plaintiffs' constitutional rights.

■ Plaintiffs' statutory claim requires little discussion, and they have virtually conceded that it is without merit. The Voting Rights Act Amendments of 1970, § 6, 42 U.S.C. § 1973aa–1(c) and (d) (1970), requires the states to provide for absentee voting in Presidential elections. See Oregon v. Mitchell, 400 U.S. 112, 134, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970). These provisions do not apply to primaries. Rosario v. Rockefeller, supra, 458 F.2d at 654.

Given our disposition of this case, we have no need to determine whether the organization Common Cause, which does not allege harm to itself or its members, has standing in this suit. See Sierra Club v. Morton, 405 U.S. 727, 728–740, 92 S.Ct. 1361, 1363–1368, 31 L.Ed.2d 636 (1972).

Summary judgment is granted to the defendants and the complaint is dismissed.