Charles **PRIGMORE** and Shirley Prigmore, suing in behalf of themselves and all others similarly situated, Plaintiffs,

v.

Hugh **RENFRO** et al., Defendants.

Civ. A. No. 72–713.

United States District Court,
N. D. Alabama, W. D.

Sept. 29, 1972.

Ralph Knowles, Jr., Drake, Knowles & Still, University, Ala., Charles Morgan, Jr., Atlanta, Ga., for plaintiffs.

Wm. J. Baxley, Atty. Gen., Henry H. Caddell, Asst. Atty. Gen., State of Alabama, Montgomery, Ala., Walter P. Crownover, Tuscaloosa, Ala., Frank J. Mizell, Jr., Montgomery, Ala., for defendants.

Before RIVES, Circuit Judge, and ALLGOOD and McFADDEN, District Judges.

McFADDEN, District Judge:

## OPINION

Plaintiffs Charles and Shirley Prigmore bring this action on behalf of

themselves and all others similarly situated seeking injunctive relief restraining the defendants from enforcing Article 4A, Ala.Code, tit. 17, §§ 64(15)–(34), which is styled in the Alabama Code as "Absent Voters and Primary, General, Special, and Municipal Elections." Plaintiffs attack the application of the statutes to both Presidential and non-Presidential elections.

Plaintiffs, Charles and Shirley Prigmore, husband and wife, are residents and duly registered voters of Tuscaloosa County, Alabama. Charles Prigmore is a Professor of Social Work at the University of Alabama in Tuscaloosa. Shirley Prigmore's usual work is that of housewife. Neither has an occupation which regularly requires his or her absence from Tuscaloosa County. On July 29, 1972, the Prigmores left for Tehran, Iran, where Charles will fulfill responsibilities as a Fulbright lecturer for one year, after which he intends to return to his post as a Professor of Social Work in Tuscaloosa. Therefore, the plaintiffs will be absent from Tuscaloosa County on November 7, 1972 and will be unable to go to their normal polling places to vote in the General Election at that time.

Before departing, plaintiffs made request to the Board of Registrars, the Probate Judge and the Register of Tuscaloosa County, asking that they be allowed to cast an absentee ballot by mail in the November election. They were informed that under applicable Alabama statutes dealing with absentee voting there was no provision which would allow them to vote absentee in this election. Therefore, Charles and Shirley Prigmore will not be able to cast a ballot for either Presidential and Vice Presidential electors or state and local offices in November. The defendants are those state officers who enforce the Alabama absentee voting provisions.

The primary basis for the attack on Article 4A insofar as it applies to non-Presidential elections is that in failing to provide a procedure for absentee voting for plaintiffs and their class, i. e., those otherwise qualified to vote but who will not be allowed to vote in the General Election on November 7, 1972 because of their temporary absence from their resident county, the statutes deny equal protection and due process under the Fourteenth Amendment, right to travel protected under the Fifth Amendment, and privileges and immunities guaranteed under Article IV, sec. 2, cl. 1. Plaintiffs also ask the Court on equal protection grounds to strike down that provision of Title 17, § 64(23) which requires absentee business people to appear in person between twenty and five days before the election to receive their absentee ballot while allowing other classes of absentee voters to apply by mail. In addition, a collateral issue in the complaint is an attack on the application of the Act to Presidential elections on the ground that it contravenes 42 U.S.C. § 1973aa–1 (1972 Supp.).

Federal jurisdiction is invoked under 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 1973aa–1 and 42 U.S.C. § 1983, Article I, sec. 2, Article IV, sec. 2, clause 1, and the First, Fifth and Fourteenth Amendments to the Constitution of the United States. Clearly, this Court has subject matter jurisdiction.

On August 30, 1972, the originating district judge granted a temporary restraining order which ordered the defendants and the classes they represent to allow plaintiffs and their class to receive and cast absentee ballots by mail for all positions, state and federal, in the November 7, 1972 General Election provided that plaintiffs and their class complied with procedures outlined by the Court. On August 28, 1972, a three-judge district court was empaneled pursuant to 28 U.S.C. §§ 2281 and 2284. At the hearing held on September 22, 1972, the Court allowed B. A. Baltzer, Helen C. Parks, and S. S. Still, the members of the Board of Registrars of Macon County, Alabama; George H. Jones, Jr., as Register of Montgomery County, Alabama, in equity; and Martha W. Smith, as a member of the Board of Registrars of Madison County, Alabama, to intervene as defendants.

■ Clearly, the application of Article 4A to non-Presidential elections is properly before a court of three judges. The application of the Act to Presidential elections on the ground that it contravenes 42 U.S.C. § 1973aa–1 (1972 Supp.) does not present a constitutional question other than under the Supremacy Clause. However, the Court will determine this issue as well as a matter of pendent jurisdiction since the same facts are involved and the same statute is attacked. Rothstein v. Wyman, 303 F. Supp. 339 (S.D.N.Y.1969).

From the stipulation of facts submitted by the parties and from the evidence introduced at the hearing before the single district judge, we are satisfied that the requirements of Rule 23, Fed.R.Civ. P., are met and that this is a proper case for a class action with respect to both plaintiffs and defendants.

■■ The Presidential election claim presents little difficulty to the Court. Article 4A provides for absentee voting by only certain classes of voters. Under the statutes, those entitled to cast absentee ballots are members of the armed forces of the United States on active duty and their wives; seamen, sailors, mariners, and deep sea salt water fishermen; disabled veterans confined to a facility operated by the Veterans Administration; those confined to a hospital on account of physical disability; students enrolled at a university or college outside their resident county and their spouses; those whose regular business or occupation regularly requires their absence from their resident county. Ala.Code, tit. 17, §§ 64(16), 64(24a), 64(24g) (1972 Supp.). This clearly contravenes portions of the Voting Rights Act Amendments of 1970, 42 U.S.C. § 1973aa–1 (1972 Supp.), which provide:

. . . and each State shall provide by law for the casting of absentee ballots for the choice of electors for President and Vice President, or for President and Vice President, by all duly qualified residents of such State who may be absent from their election district or unit in such State on the day such election is held and who have applied therefor not later than seven days immediately prior to such election and have returned such ballots to the appropriate election official of such State not later than the time of closing of the polls in such State on the day of such election.

Since the Voting Rights Act Amendments of 1970 have been held to be constitutional and enforceable insofar as they pertain to federal elections, Oregon v. Mitchell, 400 U.S. 112, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970), we hold that the State of Alabama must comply with the federal statute and follow the procedures outlined therein.

The primary constitutional question presented is whether the Equal Protection Clause of the Fourteenth Amendment permits the State of Alabama to discriminate among its citizens by allowing only certain classes of voters to vote by absentee ballot.

■■ A threshold question crucial to the proper resolution of the equal protection issue is whether Article 4A should be sustained if it can be shown to have some rational basis, or whether it must withstand a more rigid standard of review.

Plaintiffs argue that there are two fundamental constitutional rights involved and that the compelling state interest test must be applied. Plaintiffs contend that the statutes cannot stand since the State has demonstrated no compelling interest to justify the classification of absentee voters. The defendants contend that the standard rational basis test is appropriate and that the statutes must be upheld if there is a rational relationship between the statutes and a legitimate state end. Defendants contend that there is a rational connection between the classification and the prevention of fraud in the exercise of the absentee voting privilege. The evidence shows that the present statutes were designed to prevent fraud in absentee voting existing under a prior, less restrictive, absentee voting law.

We are of the opinion that the compelling interest standard does not apply. We feel that the case of McDonald v. Board of Election Commissioners of Chicago et al., 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969), controls the issues here. The plaintiffs in *McDonald* were unsentenced inmates of the Cook County jail who were not among the classes of people entitled to vote absentee in Illinois. The Court upheld the constitutionality of the Illinois statute and applied a rational, not a compelling, standard. The Court noted the crucial distinction between the right to vote and the right to an absentee ballot when it said:

> It is thus not the right to vote that is at stake here but a claimed right to receive absentee ballots.

*McDonald, supra,* at 807, 89 S.Ct. at 1408.

Plaintiffs attempt to distinguish *McDonald*, and suggest that it has impliedly been overruled, but the Court is of the opinion that it still stands and that none of these purported distinctions permit us to ignore the holding or overlook the cardinal difference between the right to vote and the right to vote absentee clearly established by that case.

Plaintiffs assert that the "watershed" case of Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969), so broadened the instances of application of the compelling standard as to impliedly repudiate the *McDonald* holding. That contention is expressly rejected by the *Kramer* Court at footnote 7, which states that:

> . . . this case presents an issue different from the one we faced in McDonald v. Board of Election Comm'rs of Chicago, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969). The present appeal involves an absolute denial of the franchise. In McDonald, on the other hand, we were reviewing a statute which made casting a ballot easier for some who were unable to come to the polls. As we noted, there was no evidence that the statute abso-

lutely prohibited anyone from exercising the franchise; at issue was not a claimed right to vote but a claimed right to an absentee ballot.

*Kramer, supra,* at pp. 626–627, 89 S.Ct. at p. 1889. In addition to distinguishing *McDonald* from *Kramer,* the Supreme Court has cited *McDonald* with clear approval in two post-*Kramer* equal protection decisions. In Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed. 2d 92 (1972), the Court held that a candidate filing fee requirement for primary elections because of its impact on the exercise of the franchise had to be closely scrutinized and found reasonably necessary to the accomplishment of legitimate state objectives in order to pass constitutional muster. The Court relied on *McDonald* in its opinion by stating:

> Of course, not every limitation or incidental burden on the exercise of voting rights is subject to a stringent standard of review. McDonald v. Board of Election, 394 U.S. 802, 89 S. Ct. 1404, 22 L.Ed.2d 739 (1969). Texas does not place a condition on the exercise of the right to vote, nor does it quantitatively dilute votes which have been cast.

*Bullock, supra,* at 143, 92 S.Ct. at 856. Again, in Schilb v. Kuebel, 404 U.S. 357, 364, 92 S.Ct. 479, 484, 30 L.Ed.2d 502 (1971), *McDonald* was endorsed and quoted for the proposition that:

> Legislatures are presumed to have acted constitutionally . . . and their statutory classifications will be set aside only if no grounds can be conceived to justify them. . . . With this much discretion, a legislature traditionally has been allowed to take reform "one step at a time".
> · · ·

Regardless of the merits of the arguments for and against imposition of the compelling standard in this case, *McDonald* stands as an imposing authority to which this Court is constitutionally bound. We hold therefore that the compelling interest test is not applicable to the State statutes before the Court and

that they should be judged by a rational basis test. Under such a test, the statutes pass muster. The statutes are neither unusual nor arbitrary. They provide a method of absentee voting which is available to most absent voters and their restrictions are reasonably related to protection against fraud in the voting of absentee ballots. We are of the opinion that the classification in the statutes is not invidious and it does not have the stigma of wealth or race classifications condemned by the courts.

Plaintiffs contend, however, that lack of sufficient opportunities for absentee voting impinges on their fundamental right to travel, an element not present in *McDonald,* and therefore must be closely scrutinized and struck down. Plaintiffs rely on Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), and Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). In *Shapiro,* the Court struck down durational residence requirements for welfare recipients on the ground that they impinged on the fundamental right to travel between the states. The Court said:

> . . . concepts of personal liberty unite to require that all citizens be free to travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement.

*Shapiro, supra,* 394 U.S. at 629, 89 S.Ct. at 1329. In Dunn v. Blumstein, the Court held a Tennessee one-year durational residency requirement for voting unconstitutional and in doing so subjected the Tennessee statute to close scrutiny because it affected not only the fundamental right to vote but also the equally fundamental right to travel.

■ The failure to provide a right to cast an absentee ballot to travelers is not a *penalty* imposed solely because the persons are travelers; instead, all qualified voters—travelers and nontravelers, sick persons, persons whose business duties prevent their voting and others—

who are unable to reach the polling place on election day simply cannot vote. Such a requirement does not constitute a *penalty* imposed upon the constitutional right to travel. See Dunn v. Blumstein, *supra,* 405 U.S. at 342 n. 12, 92 S.Ct. 995, citing Shapiro v. Thompson, *supra,* 394 U.S. at 638 n. 21, 89 S.Ct. 1322; cf. Evansville-Vanderburgh Airport Authority District v. Delta Airlines, 405 U.S. 707, 714, 92 S.Ct. 1349, 31 L.Ed.2d 620 (1972).

Here, no fundamental right is involved. The right to vote is unquestionably basic to a democracy, but the right to an absentee ballot is not. Historically, the absentee ballot has always been viewed as a privilege, not an absolute right [see 26 Am.Jur.2d, Elections § 243 (1966)]. It is a purely remedial measure designed to afford absentee voters the privilege as a matter of convenience, not of right. *McDonald, supra*; Fidell v. Board of Elections of City of New York, 343 F.Supp. 913 (E.D.N.Y. 1972) (three-judge court). There is no bar to the right to vote nor to the right to travel. Conceptually, the exercise of one right impinges on the other, but this is not sufficient to cause the statutes to be struck down. Plaintiffs have a choice. They may stay home and vote, or pursue their plans and not vote. They are not faced with a complete denial of the right to vote, as were the plaintiffs in Kramer v. Union Free School Dist., *supra,* and Dunn v. Blumstein, *supra.*

There may be a distinction between the right to merely travel, Crandall v. Nevada, 73 U.S. (6 Wall.) 35, 18 L.Ed. 744 (1867), and the right to migrate with the intent to reside indefinitely, Dunn v. Blumstein, *supra.* There are also possible distinctions between interstate travel and intrastate travel on the one hand and between interstate travel and the right to travel abroad on the other hand.

The *Dunn* and *Shapiro* cases are based on a right of interstate migration. The international travel cases have involved attempts by the federal government to

restrict or prohibit travel abroad and have come under the scrutiny of the courts under the Due Process Clause of the Fifth Amendment. Kent v. Dulles, 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958); Aptheker v. Secretary of State, 378 U.S. 500, 84 S.Ct. 1659, 12 L. Ed.2d 992 (1964). In these cases, there was an attempted prohibition, not an indirect impingement as here. The Court finds it unnecessary to decide whether there are in fact any of these distinctions. There is no fundamental right to an absentee ballot. That ballot is a mere gratuitous convenience supplied by the state. Therefore, the restriction which denial of that privilege imposes on the right to travel is not significant and does not overburden the right to travel. We do not read *Shapiro* as compelling a different result. There the Court found the discrimination to be invidious before reaching the travel question and then went on to say that the classification of welfare recipients served to penalize the right to travel and had to withstand a close scrutiny test.

■ Clearly, the states have the power to regulate elections subject to the right of Congress to regulate certain national elections. Art. I, § 4, cl. 1, of the Constitution of the United States provides:

> The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators.

In Oregon v. Mitchell, *supra*, the Supreme Court upheld the provision of the Voting Rights Act Amendments of 1970 establishing absentee balloting rules under Congress' broad powers to regulate federal elections and maintain a national government. Mr. Justice Black pointed out the critical difference between rules applying to national and local elections, when he said:

> Our judgments also save for the States the power to control state and local elections which the Constitution originally reserved to them and which no subsequent amendment has taken from them. The generalities of the Equal Protection Clause of the Fourteenth Amendment were not designed or adopted to render the States impotent to set voter qualifications in elections for their own local officials and agents in the absence of some specific constitutional limitations.

*Oregon, supra,* 400 U.S. at 134, 91 S.Ct. at 270.

The survival of a federal system depends on continued recognition of the need for allocation of power between the national government and the states. The strong, clear language of Art. I coupled with the general endorsement of state power in the Tenth Amendment underscores the need for state regulation of non-Presidential elections. In our judgment, the State of Alabama has exercised that power in a manner not inconsistent with the Constitution.

There is neither an invidious or suspect discrimination or classification nor a penalty on the right to travel present here. That being the case, the traditional equal protection standard is applicable. The statutes tested by that yardstick are constitutional and may stand, but they must yield, under the Supremacy Clause of the Constitution, to the federal statute in the Presidential and Vice Presidential elections. The defendants will be required to comply with the federal statute and provide plaintiffs, and all other absentee voters who apply, with absentee ballots for the Presidential and Vice Presidential elections. All other relief will be denied.