**Mary S. WHALEN et al.**

**v.**

**Clarence HEIMANN, First Selectman of the Town of Trumbull, et al.**

**Civ. No. 15789.**

United States District Court, D. Connecticut.

Jan. 10, 1974.

354

David M. Lesser, and William H. Clendenen, Jr., New Haven, Conn., for plaintiffs.

Arthur D. Friedman, L. Douglas Shrader, Bridgeport, Conn., for defendants.

## MEMORANDUM OF DECISION

NEWMAN, District Judge.

This suit raises interesting questions as to whether in certain circumstances

the unavailability of absentee ballots impairs constitutionally protected voting rights. Plaintiffs are qualified electors who were unable, by reason of physical disability or absence from the state for business reasons,[1] to appear at the polls to vote in a referendum held in the Town of Trumbull on May 15, 1973. An unincorporated voluntary association of electors in Trumbull is also a plaintiff. The suit challenges the constitutionality of Conn.Gen.Stat. § 9–369 (Supp.1973) and the constitutionality of Chapter II, § 9 (d), of the Trumbull Town Charter as applied to local referenda. Plaintiffs claim that Conn.Gen.Stat. § 9–369 has a substantial adverse impact upon the right to vote and is unconstitutional because it does not extend absentee balloting to qualified electors who are precluded by personal circumstances from appearing at the polls to vote in local referenda held on a date other than the date of a general election.[2]

Plaintiffs seek a declaratory judgment, pursuant to 42 U.S.C. § 1983, that Conn.Gen.Stat. § 9–369 violates the First and Fourteenth Amendments of the United States Constitution.[3] Defendants urge dismissal of the complaint

for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Since, in addition to an offer of proof, affidavits and exhibits have been filed by the parties, this motion to dismiss will be treated as a motion for summary judgment, Fed.R.Civ.P. 12(b), which can appropriately be considered since the parties do not dispute either the truthfulness or the existence of the material facts alleged in these documents.

On April 10, 1973, the Town Council for the Town of Trumbull appropriated the sum of $725,000.00 to pay for additional costs and expenses that might be incurred in the construction, furnishing and equipping of an 18-hole golf course previously approved by the Town Council,[4] and to meet additional costs and expenses for the construction, furnishing and equipping of other recreational facilities in Trumbull. Pursuant to Chapter II, § 9, of the Trumbull Town Charter, this appropriation was submitted to a referendum on May 15, 1973. The action of the Town Council was rejected by a majority of the electors who voted in the referendum. However, under § 9(d) of the

1. Plaintiff Mary S. Whalen alleges that she was unable to vote in the referendum on May 15, 1973, because she was confined to her home by a serious illness and could not appear at the polls. Physical infirmities prevented plaintiff Marie Velgot, a qualified elector in the Town of Trumbull for approximately nineteen years, from using the voting machines at the designated polling place. Plaintiffs Anton Cornell and Silvio Percivalle indicate that they were both in the State of Mississippi on that day negotiating a contract for their employer. They claim that "postponing or delaying these negotiations . . . might have caused serious and adverse financial consequences" to them and to their company. All allege they would have voted to reject the Town Council's appropriation.

2. Conn.Gen.Stat. § 9–369 (Supp.1973) provides, in pertinent part:
. . . The provisions of chapter 145 shall not apply to any vote taken upon a proposal or question which is submitted at a meeting of the electors or voters which meeting is not an "election" as said term is defined in section 9–1.

The provisions of Chapter 145 establish the absentee balloting procedures for state, municipal or special elections. Under Conn. Gen.Stat. § 9–1(d) (Supp.1973), " 'election' means any electors' meeting at which the electors choose public officials by use of voting machines or by paper ballots. . . ." Therefore, absentee balloting is not available to qualified electors in local referenda that are not conducted in conjunction with selection of "public officials by use of voting machines or by paper ballots."

3. Since the complaint initially sought an injunction against the operation and enforcement of Conn.Gen.Stat. § 9–369 to the extent that it fails to provide for absentee voting in referenda, plaintiffs applied for a three-judge court, pursuant to 28 U.S.C. §§ 2281 and 2284. Plaintiffs later agreed to withdraw their request for injunctive relief, thereby obviating further consideration of the need for a three-judge court.

4. On October 30, 1972, the Town Council of Trumbull appropriated $800,000.00 for the construction, furnishing and equipping of an 18-hole golf course.

Town Charter, a measure adopted by the Town Council and submitted to a referendum is not defeated even though opposed by a majority vote, unless that majority exceeds in number "20% of the electors of the Town on the last completed voting list." On the basis of calculations made by the Town Clerk, the majority of electors rejecting the $725,000.-00 appropriation did not "exceed in number 20% of the electors on the last completed voting list" but equaled only 19.7% of the qualified electors on that voting list. Therefore, the appropriation was not defeated by the referendum.

Plaintiffs claim that Conn.Gen.Stat. § 9–369 is unconstitutional because it fails to establish absentee balloting procedures for referenda and because election officials have refused to make alternate methods of voting available to qualified electors in referenda who are unable to appear at the designated polling places for health or business reasons. In such circumstances, plaintiffs assert that the denial of absentee ballots in referenda is tantamount to an absolute denial of the right to vote. Therefore, they contend that Conn.Gen.Stat. § 9–369 has a substantial adverse impact upon the right to vote and is unconstitutional in view of the recent decisions in Goosby v. Osser, 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed. 2d 36 (1973); Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); Dunn v. Blumstein, 405 U.S. 330, 92 S. Ct. 995, 31 L.Ed.2d 274 (1972); McDonald v. Board of Election, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969).

Plaintiffs' claim is somewhat different from the claims made in prior cases dealing with absentee ballot provisions. While the claim is said to rest in part on the equal protection clause, plaintiffs do not contend that Connecticut has unconstitutionally distinguished between those elections where absentee ballots are available and those where they are not, cf. Fidell v. Board of Elections, 343 F. Supp. 913 (E.D.N.Y.1972) (absentee ballots available in general elections but not in primaries), nor between groups of voters eligible for absentee ballots and groups that are not, cf. McDonald v. Board of Election, supra (pre-trial detainees incarcerated in the county of their residence denied absentee ballots); Prigmore v. Renfro, 356 F.Supp. 427 (N.D.Ala.1972) (absentee ballots denied to those temporarily absent from their resident county for other than specified reasons). The essence of plaintiffs' claim is that their individual circumstances make it impossible (or, for some, difficult) to vote in person, and that voting regulations that require personal attendance to cast a ballot unconstitutionally impair their right to vote. Their equal protection claim rests on a distinction between those who are able to attend the polls in person and those who cannot. Plaintiffs do not claim the existence of a general right to an absentee ballot, only the right to such a ballot, or other alternative, when physical attendance at the polls is impossible and even difficult.

Though prior cases offer some clues to a resolution of plaintiffs' claim, they are not precisely dispositive. No case appears to have faced the issue of whether, without regard to distinctions between elections or between groups entitled to absentee ballots, a person is denied a constitutional right when he is permitted to vote only by a means which for him is physically impossible. McDonald never reached this issue because the record in that case failed to indicate that the state would not make some alternative arrangements to permit the pre-trial detainees to vote. Thus, the issue in McDonald was simply whether a group, for whom voting was not shown to be an impossibility, could complain because they were denied absentee ballots while others obtained them. Applying the traditional rational relationship test, the Court found the classification valid.

The Supreme Court next approached the issue in Goosby v. Osser, 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973), in which pre-trial detainees sought ab-

sentee ballots under circumstances where they alleged state law did prevent them from voting. The Court found *McDonald* not controlling and reversed the lower courts' failure to convene a three-judge court. The Supreme Court held only that the issue raised was not insubstantial, but intimated no view on the merits.

Plaintiffs here analogize their claim to that found substantial in *Goosby*.[5] There is, however, a clear difference. The impossibility of voting that confronted the *Goosby* plaintiffs was far more directly the result of governmental action than what has occurred here. In *Goosby* the state had arrested and incarcerated the plaintiffs and denied or set the terms of their bail, thus preventing them from attending the polls. Here Connecticut has taken no action that impairs plaintiffs' ability to attend the polls. Their inability stems entirely from their personal circumstances. This difference alters, but does not end the inquiry, for Connecticut has not regulated the franchise with complete neutrality with respect to these plaintiffs. After all, it is state law that requires the ballot to be cast in person, in the circumstances of this case, and this is the requirement these plaintiffs are challenging.

■ Is there anything in the Constitution that prohibits a state from requiring that voting be done by physical attendance at the polls? Surely this is not an arbitrary or unreasonable requirement such as would violate the due process or equal protection clauses. A physically incapacitated voter has no more basis to challenge a voting requirement of personal appearance than a blind voter can complain that the ballot is not printed in braille.[6] Nor is it the province of courts to weigh the relative ease or difficulty with which the state could accommodate its voting procedures to meet the needs of various handicapped voters. These are policy questions to be resolved by legislators.

The earlier cases, though distinguishable as to their holdings, all characterized absentee ballots as a remedial device, the type of reform measure that legislatures may generally extend by degrees. McDonald v. Board of Election, *supra,* 394 U.S. at 809, 89 S.Ct. 1404; Prigmore v. Renfro, *supra,* 356 F.Supp. at 432; Fidell v. Board of Elections, *supra,* 343 F.Supp. at 916. One cannot read the Supeme Court's unexcited catalogue of the groups of Illinois voters denied absentee ballots "for whom voting may be extremely difficult, if not practically impossible" without concluding that the Court did not believe their inability to vote denied them any constitutional right. McDonald v. Board of Education, *supra,* 394 U.S. at 810 and n. 8, 89 S.Ct. at 1409.

■ Whatever level of justification is needed to validate a requirement of personal attendance at a referendum held on a day other than the day of a general election has been adequately reached by defendants. They point to all of the practical problems testified to before the Connecticut General Assembly that was asked to consider and rejected extension of absentee ballot provisions to precisely the type of referendum at issue here. One of the principal objectives of municipal referenda is the rapid submission of questions to the electorate,[7] an objective that would certainly be impaired by even

5. Though the Supreme Court concluded that the Court of Appeals was without jurisdiction to consider the merits of the claim in *Goosby*, 409 U.S. at 512, n. 8, 93 S.Ct. 854, it is of some interest to note that the Third Circuit found the claim to be without merit. 452 F.2d 39, 41 (3d Cir. 1971).

6. Though the Constitution does not require special arrangements to facilitate voting by the physically handicapped, legislatures of course have ample discretion to enact remedial measures for this purpose. *See, e.g.,* Conn.Gen.Stat. § 9–297.

7. Pursuant to Chapter II, § 9(g), of the Trumbull Town Charter, a referendum may be held on seven day's notice. Section 9(d) of the Trumbull Town Charter requires that a local referendum must be held within thirty days after the certification of referendum petitions.

the slight delays required to prepare, distribute, and validate absentee ballots.

With the rejection of the constitutional challenge by those physically incapacitated from attending the polls in person, the claim of those plaintiffs for whom such attendance is a personal or financial inconvenience falls *a fortiori*.

■ In a related claim, plaintiffs contend that Chapter II, § 9(d), of the Trumbull Town Charter violates the Fourteenth Amendment because it requires that the majority of voters in a referendum rejecting a measure approved by the Town Council must "exceed in number 20% of the electors of the Town on the last completed voting list," but it does not require election officials to reduce the last completed voting list by subtracting the number of qualified electors who were precluded from voting by personal circumstances for lack of absentee ballots. Plaintiffs contend that in computing the results of the referendum held on May 15, 1973, the defendants conspired to deprive plaintiffs and other similarly situated electors of equal protection of the law in violation of 42 U.S.C. § 1985. The claim is that plaintiffs' votes, and the vote of any other qualified elector who was unable, because of the unavailability of absentee ballots, to vote against the Town Council's appropriation, were "counted" with the votes of those who favored the appropriation. By being included in the base of all electors on which the 20% requirement was computed, these voters in effect were "counted" as if they had cast $\frac{1}{5}$ of a vote in favor of the appropriation, since every five persons on the list of electors, including those who did not vote, cancelled out each vote that was cast against the appropriation.

plication of Conn.Gen.Stat. § 9–369 and have been removed from the last completed voting list before determining whether the majority of electors that voted against the appropriation met the 20% threshold requirement imposed by § 9(d).[8]

This challenge to the application of the 20% requirement loses virtually all its force with the rejection of plaintiffs' claimed right to an absentee ballot. If the plaintiffs have no constitutional right to have special arrangements made to enable them to cast votes against the appropriation, it is hard to see why they can complain because their presence on the voter list, like that of every other voter on the list, in effect counts them as $\frac{1}{5}$ of a vote in favor of the appropriation. Even those who vote against the appropriation are, in this sense, counted as casting $\frac{1}{5}$ of a vote in favor of the appropriation. It is true that a physically incapacitated elector lacks the opportunity, available to other electors, to vote against the appropriation and thereby overcome the effect of the $\frac{1}{5}$ of a vote in favor of the appropriation attributed to him by the 20% requirement. But his real complaint is the unavailability of a means of voting, not his being counted in the base for purposes of the 20% requirement.

The Town of Trumbull has an obviously legitimate governmental interest in adopting referendum procedures that will prevent the rejection of a considered decision of the Town Council by a faction of electors too few in number adequately to present the best interests of other town residents. Gordon v. Lance, 403 U.S. 1, 91 S.Ct. 1889, 29 L.Ed.2d 273 (1971). Plaintiffs do not contend that the 20% requirement is not a rational method of accomplishing this objective.

8. Plaintiffs illustrate their position with the following calculations. The voting list used by defendants to compute the 20% requirement contained 17,874 electors. Therefore, under § 9(d), the appropriation of the Town Council could have been rejected only by a majority of "no" votes totaling 3,575 votes (one more vote than 20% x 17,874). However, since only 3,525 "no" votes were cast in the May 15th referendum, these "no" votes would not have exceeded the 20% threshold requirement imposed by § 9(d), unless there were only 17,624 electors on the last completed voting list (3,525 equals one vote more than 20% x 17,624).

Election officials would encounter substantial administrative difficulties if they were required to reduce the last completed voting list by a number of qualified electors who were precluded by personal circumstances from reaching the polls to vote in a particular referendum. Since these qualified electors are not entitled to an absentee ballot, the Town would have to adopt referendum procedures to identify those electors unable to appear at the polls to vote in a particular referendum. Realistically, such procedures would interfere with the overriding legitimate governmental interest in holding speedy referenda on controversial issues requiring immediate action.[9] Defendants' application of Chapter II, § 9(d), of the Trumbull Town Charter to the results of the referendum held on May 15, 1973, did not deny plaintiffs' equal protection of the law in violation of 42 U.S.C. § 1985. No arbitrary or unreasonable action has occurred. Moreover, it is now clear that mathematical precision is not the touchstone of equal protection in voting cases. Gaffney v. Cummings, 412 U.S. 735, 93 S.Ct. 2321, 37 L.Ed.2d 298 (1973).

■■ Finally, plaintiffs assert that defendants conspired to deny them equal protection of the law because they did not remove from the base on which the 20% requirement was computed 77 electors who entered the voting booths during the May 15, 1973, referendum but whose votes were not recorded by the machine. The parties are unable to explain why the votes of these 77 electors were not recorded by the voting machines. Some of these electors may have decided not to vote after entering the voting booths; the votes of others may have failed to register because of a malfunction in the voting machine. In either case, these 77 electors had no more impact upon the May 15, 1973, referendum than qualified electors who could have reached the polls but who decided to stay at home rather than vote. Since qualified electors who stayed at home rather than vote may be included in the last completed voting list to protect the Town of Trumbell's legitimate governmental interest in setting a reasonable threshold requirement upon the majority voting to reject the action of the Town Council in a referendum, plaintiffs were not denied equal protection of the law when defendants failed to remove the 77 electors from the last completed voting list.

■■■ Since plaintiffs were not denied any constitutional right by the application of Conn.Gen.Stat. § 9–369 and Chapter II, § 9(d), of the Trumbull Town Charter to the referendum held in Trumbull on May 15, 1973, defendants' motion for summary judgment is granted.[10]

---

9. *See* note 7 *supra.*

10. In Count II of their complaint, plaintiffs also contend that in computing the number of electors on the last completed voting list before computing the 20% requirement, defendants deliberately and knowingly violated the Trumbull Town Charter by adding to the last completed voting list the names of individuals who had become qualified electors in Trumbull after the last completed voting list had been closed. Since these allegations raise a pendent claim which is not inextricably intertwined with plaintiffs' constitutional claims, and since no factual exploration is needed to resolve the federal issues, it is not appropriate to exercise pendent jurisdiction over this alleged violation of the Trumbull Town Charter. United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1965).

Plaintiffs also claim that in November, 1972, defendants refused to supply plaintiffs with the proper petition forms for securing the signatures of electors who wished to submit to a referendum a prior appropriation by the Town Council for the construction of a golf course. A mandamus action raising identical issues and seeking to compel the Town Clerk to certify the referendum petition was instituted in the Court of Common Pleas for Fairfield County in December, 1972. On March 6, 1973, the Court of Common Pleas issued a decision upholding the action of the Town Clerk. The pendency of an appeal from that decision in the Connecticut Supreme Court is an additional reason not to exercise pendent jurisdiction over these issues raised by Count II of the complaint.