Sam L. McDONALD

v.

**BOARD OF ELECTION COMMISSIONERS OF CHICAGO**, Sidney T. Holzman, Chairman, Marie H. Suthers, Commissioner, and Francis P. Canary, Commissioner.

**No. 67 C 290.**

United States District Court
N. D. Illinois.
Feb. 27, 1967.

Stanley T. Kusper, Jr., Chicago, Ill., for Board of Election Commissioners.

Stanley A. Bass and Melvin B. Goldberg, Civil Legal Aid Service, Chicago, Ill., for plaintiff.

Memorandum of Decision

LYNCH, District Judge.

Sam L. McDonald, plaintiff, brings this action against the Chicago Board of Election Commissioners under the 14th Amendment to the United States Constitution for such equitable relief as will enable him to vote in the primary and aldermanic election in the City of Chicago on February 28, 1967.

The petitioner is incarcerated in Cook County Jail, unable to afford bail and awaiting a preliminary hearing on an alleged offense. His next scheduled court appearance is set several weeks after the election.

The Board of Election Commissioners admits that the petitioner is a duly qualified and registered voter.

The Illinois election laws provide for the furnishing of ballots to duly qualified and registered voters unable to be present at the polls because of absence from the county, physical incapacity, or observance of a religious holiday. Chapter 46, Section 19–1 of the Illinois Revised Statutes.

The petitioner is a resident of Cook County and the provisions regarding physical incapacity are the basis for the petitioner's contention that he is entitled to an absentee ballot. The Illinois statutes provide that persons unable to be present at the polls because of physical incapacity shall submit the certificate of an attending physician or Christian Science practitioner. The petitioner has not done this, presumably because he is in good health, and the Board of Election Commissioners has thus refused to provide him with an absentee ballot. He is however, obviously physically incapable of being present at the polls and has submitted the affidavit of the Warden of the Cook County Jail. The Board of Election Commissioners, in effect, has taken the position that organic illness is the only type of physical incapacity encompassed by the statute, and contends that the certificate of the physician or Christian Science practitioner, attesting to the applicant's illness, is a precondition to the right to an absentee ballot.

It is the opinion of the Court that the Illinois statutes as interpreted by the Board of Election Commissioners in this particular instance, deprive the petitioner of his right to Equal Protection of Law under the 14th Amendment.

It is, of course, the right of the State of Illinois to impose reasonable restrictions on the availability of the ballot. The absence of statutory provisions to accommodate persons unable to be present at the polls on election day perhaps would pose no constitutional problem. But once the right to vote by absentee ballot has been provided, there must be no arbitrary or discriminatory denial. For example, in view of the recent United States Supreme Court decisions pertaining to voting rights, no one would seriously contend that a state could constitutionally deny a person an absentee ballot solely on the grounds of his race or his religion or his economic status.

In Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220, the Supreme Court referred to the franchise of voting as "a fundamental political right, because preservative of all rights." And in Reynolds v. Sims, 377 U.S. 533, 561–562, 84 S.Ct. 1362, 1381, 12 L.Ed.2d 506, the Supreme Court said, "Undoubtedly, the right of suffrage is a fundamental matter in a free and democratic society. Especially since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized."

In Reynolds v. Sims, the Supreme Court was considering charges that voters in certain parts of the state had greater representation per person in the

State legislature than voters in other parts of the state. The Court concluded:

"A citizen, a qualified voter, is no more nor no less so because he lives in the city or on the farm. This is the clear and strong command of our Constitution's Equal Protection Clause. This is an essential part of the concept of a government of laws and not men. This is at the heart of Lincoln's vision of 'government of the people, by the people, and for the people.' The Equal Protection Clause demands no less than substantially equal state legislative representation for all citizens, of all places as well as of all races."

It seems to this Court that petitioner McDonald, a citizen, a qualified voter, is no more nor no less so whether his physical incapacity to be present at the polls stems from organic illness or from physical confinement on charges of which he is presumed innocent until proven otherwise.

In Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675, the Supreme Court considered the constitutionality of a provision of the Texas constitution which prohibited servicemen who moved to Texas during the course of their military duty from ever voting in any election in the state so long as they were members of the Armed Forces. The Court held that the petitioner, a sergeant in the U. S. Army, was being deprived of a right secured by the Equal Protection of the Law clause of the 14th Amendment.

The Court in Carrington v. Rash stated:

"It is true that the State has treated all members of the military with an equal hand. And mere classification, as this Court has often said, does not of itself deprive a group of equal protection. Williamson v. Lee Optical Co., 348 U.S. 483 [75 S.Ct. 461, 99 L.Ed. 563]. But the fact that a State is dealing with a distinct class and treats the members of that class equally does not end the judicial inquiry. 'The courts must reach and determine the question whether the classifications drawn in a statute are reasonable in light of its purpose * * *.' McLaughlin v. State of Florida, 379 U. S. 184, 191 [85 S.Ct. 283, 288, 13 L.Ed.2d 222]."

In Harper v. Virginia Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169, the Court held unconstitutional the state of Virginia's poll tax of $1.50, stating:

"* * * we must remember that the interest of the State, when it comes to voting, is limited to the power to fix qualifications. Wealth, like race, creed, or color, is not germane to one's ability to participate intelligently in the electoral process. Lines drawn on the basis of wealth or property, like those of race (Korematsu v. United States, 323 U.S. 214, 216, 65 S.Ct. 193, 194, 89 L.Ed. 194) are traditionally disfavored * * * To introduce wealth or payment of a fee as a measure of a voter's qualifications is to introduce a capricious or irrelevant factor. The degree of the discrimination is irrelevant. In this context —that is, as a condition of obtaining a ballot—the requirement of fee paying causes an 'invidious' discrimination * * * that runs afoul of the Equal Protection Clause."

And in Gray v. Sanders, 372 U.S. 368, 380, 83 S.Ct. 801, 808, 9 L.Ed.2d 821, the Court said that neither homesite nor occupation "affords a permissible basis for distinguishing between qualified voters within the State."

■ There obviously was no intent on the part of the legislature of the State of Illinois to disenfranchise persons in the position of the petitioner. Chapter 46, Section 3–5 of the Illinois Revised Statutes provides that a person loses the right to vote when he is *convicted and sentenced.* This petitioner has neither been convicted nor sentenced, and indeed he is presumed to be innocent of the offense with which he is charged. *If the petitioner were incarcerated in some county other than the one in which he resides, he would be entitled to an absentee ballot as a person unable to be present*

*at the polls because of absence from the county. And it would seem that even a person incarcerated in the county of his residence would be entitled to a ballot if he were ill and submitted with his application the certificate of his duly licensed attending physician. It would also seem that a prisoner incarcerated in the county of his residence would be entitled to a ballot if the tenets of his religion were sufficient to justify his absence from the polls on the day of election.*

In effect, the Board of Election Commissioners construes the Illinois Statute as barring the absentee ballot only to those prisoners who are healthy and are incarcerated in the county of their residence. This Court cannot ascribe such an intent to the Illinois legislature. Such construction invidiously discriminates and deprives the petitioner of the equal protection of the law.

For the reasons stated herein the Board of Election Commissioners of the City of Chicago is ordered to furnish petitioner with an absentee ballot.