## McDONALD ET AL. v. BOARD OF ELECTION COMMISSIONERS OF CHICAGO ET AL.

No. 68.   Argued November 19, 1968.—
Decided April 28, 1969.

*Stanley A. Bass* argued the cause for appellants. With him on the briefs was *Marshall Patner.*

*Stanley T. Kusper, Jr.,* argued the cause for appellees. With him on the brief was *Matthew J. Beemsterboer.*

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

Appellants and the class they represent are unsentenced inmates awaiting trial in the Cook County jail who, though they are qualified Cook County electors, cannot readily appear at the polls either because they are charged with nonbailable offenses or because they have been unable to post the bail imposed by the courts of Illinois.[1] They cannot obtain absentee ballots, for they constitute one of a number of classes for whom no provision for absentee voting has yet been made by the Illinois Legislature. The constitutionality of Illinois' failure to include them with those who are entitled to vote absentee is the primary issue in this direct appeal from a three-judge court.

The specific provisions attacked here, Ill. Rev. Stat., c. 46, §§ 19-1 to 19-3, have made absentee balloting available to four classes of persons: (1) those who are absent from the county of their residence for any reason whatever; (2) those who are "physically incapacitated," so long as they present an affidavit to that effect from a licensed physician; (3) those whose observance of a religious holiday precludes attendance at the polls; and (4) those who are serving as poll watchers in precincts

---

[1] At the time of bringing suit, appellant McDonald was being held without bail on a charge of murder; his subsequent trial resulted in a hung jury, and he then pleaded to a reduced charge of manslaughter, a bailable offense. Appellant Byrd, who was discharged after his robbery complaint was dismissed at his preliminary hearing, had been held because of his inability to post a $5,000 bond.

other than their own on election day.[2]  The availability
of the absentee ballot in Illinois has been extended to its
present coverage by various amendments over the last
50 years.  Prior to 1917, Illinois had no provision for
absentee voting, requiring personal attendance at the
polls, and in that year the legislature made absentee
voting available to those who would be absent from the
county on business or other duties.  In 1944 absentee
voting was made available to all those absent from the
county for any reason.  The provisions for those remain-
ing in the county but unable to appear at the polls
because of physical incapacity, religious holidays, or
election duties were added in 1955, 1961, and 1967,
respectively.

On March 29, 1967, appellants made timely [3] applica-
tion for absentee ballots for the April 4 primary because
of their physical inability to appear at the polls on that
election day.  The applications were accompanied by an
affidavit from the warden of the Cook County jail attest-
ing to that inability.  These applications were refused by

---

[2] Section 19-1 of the Illinois Election Code identifies those persons
who can apply for absentee ballots.  Section 19-2 provides for the
time and manner in which such application must be made, including
the requirement that affidavits from a licensed attending physician
or a Christian Science practitioner accompany applications from
those physically incapacitated.  Section 19-3 sets out the format
of the applications and accompanying affidavits.  In addition to
their allegations that these provisions violate equal protection,
appellants also sought below a ruling that appellee Board, in inter-
preting these laws, had misconstrued them not to include judicially
incapacitated persons.  Reading § 19-1 together with § 19-2, the
District Court concluded that appellants were not included within
the coverage of the provisions, and this statutory construction is not
challenged here.

[3] Appellants do not challenge the provisions setting out the time
within which the applications must be made and thus concede that
those persons incarcerated just prior to election day are not entitled
to an absentee ballot.

the appellee Board of Election Commissioners on the ground that appellants were not "physically incapacitated" within the meaning of §§ 19–1 and 19–2 of the Illinois Election Code. On the same day appellants filed a complaint, alleging that they were unconstitutionally excluded from the coverage of the absentee provisions. They requested that a three-judge court be convened to rule the provisions violative of equal protection insofar as the provisions required denial of an absentee ballot to one judicially incapacitated while making it available at the same time to one medically incapacitated; and they sought an injunction to restrain appellee Board "from refusing to grant [appellants'] timely applications for absentee ballots." The District Court granted appellants' request for temporary relief on March 30, before the three-judge court was convened, and ordered the Board to issue ballots to qualified Illinois electors awaiting trial in the Cook County jail.[4] Both parties then filed motions for summary judgment, the Board asserting that to honor the applications would subject its members to criminal liability under Illinois law.[5]

---

[4] The grant of temporary relief was based in part on an earlier suit brought by appellant McDonald in the District Court for such equitable relief as would allow him to vote in the February 28, 1967, primary and aldermanic election in Chicago. In ordering the Board to furnish appellant with an absentee ballot for that election, the one-judge court noted that Illinois statutes specifically disenfranchised only those who were convicted and sentenced (Ill. Rev. Stat., c. 46, § 3–5 (1967)), that persons awaiting trial in jails in counties other than their resident counties could qualify for an absentee ballot as one "absent from the county in which he is a qualified elector," and that the Illinois Legislature did not intend to exclude individuals in appellant's circumstances from among those "physically incapacitated." *McDonald* v. *Board of Election Commissioners of Chicago,* 265 F. Supp. 816 (1967).

[5] Ill. Rev. Stat., c. 46, §§ 29A–1, 29A–5 (1967), provide for penalties of up to five years' imprisonment, or a fine not to exceed $5,000, or both, for violating the Illinois Election Code. Although

On December 11, the District Court granted summary judgment for the Board, holding that the Illinois provisions extending absentee voting privileges to those physically incapacitated because of medical reasons from appearing at the polls constituted a proper and reasonable legislative classification not violative of equal protection. The case was brought here by appellants on direct appeal, 390 U. S. 1038 (1968), and we affirm.

Appellants argue that Illinois' absentee ballot provisions violate the Equal Protection Clause of the Fourteenth Amendment for two reasons. First, they contend that since the distinction between those medically incapacitated and those "judicially" incapacitated bears no reasonable relationship to any legitimate state objective, the classifications are arbitrary and therefore in violation of equal protection. Secondly, they argue that since pretrial detainees imprisoned in other States or in counties within the State other than those of their own residence can vote absentee as Illinois citizens absent from the county for any reason, it is clearly arbitrary to deny the absentee ballot to other unsentenced inmates simply because they happen to be incarcerated within their own resident counties. Underlying appellants' contentions is the assertion that since voting rights are involved, there is a narrower scope for the operation of the presumption of constitutionality than would ordinarily be the case with state legislation challenged in this Court. See *Yick Wo* v. *Hopkins,* 118 U. S. 356, 370 (1886).

Before confronting appellants' challenge to Illinois' absentee provisions, we must determine initially how stringent a standard to use in evaluating the classifications made thereunder and whether the distinctions must be justified by a compelling state interest; for appellants as-

there are no controlling Illinois cases, neither party contends here that the absentee ballot provisions are permissive only, allowing the grant of absentee ballots to any one not specified in the statute.

sert that we are dealing generally with an alleged infringement of a basic, fundamental right. See, *e. g., Reynolds* v. *Sims,* 377 U. S. 533 (1964); *Harper* v. *Virginia Board of Elections,* 383 U. S. 663 (1966). Thus, while the "States have long been held to have broad powers to determine the conditions under which the right of suffrage may be exercised," *Lassiter* v. *Northampton County Board of Elections,* 360 U. S. 45, 50 (1959), we have held that once the States grant the franchise, they must not do so in a discriminatory manner. See *Carrington* v. *Rash,* 380 U. S. 89 (1965). More importantly, however, we have held that because of the overriding importance of voting rights, classifications "which might invade or restrain them must be closely scrutinized and carefully confined" where those rights are asserted under the Equal Protection Clause; *Harper* v. *Virginia Board of Elections, supra,* at 670. And a careful examination on our part is especially warranted where lines are drawn on the basis of wealth or race, *Harper* v. *Virginia Board of Elections, supra,* two factors which would independently render a classification highly suspect and thereby demand a more exacting judicial scrutiny. *Douglas* v. *California,* 372 U. S. 353 (1963); *McLaughlin* v. *Florida,* 379 U. S. 184, 192 (1964).

Such an exacting approach is not necessary here, however, for two readily apparent reasons. First, the distinctions made by Illinois' absentee provisions are not drawn on the basis of wealth or race. Secondly, there is nothing in the record to indicate that the Illinois statutory scheme has an impact on appellants' ability to exercise the fundamental right to vote. It is thus not the right to vote that is at stake here but a claimed right to receive absentee ballots. Despite appellants' claim to the contrary, the absentee statutes, which are designed to make voting more available to some groups who cannot easily get to the polls, do not themselves deny

appellants the exercise of the franchise; nor, indeed, does Illinois' Election Code so operate as a whole, for the State's statutes specifically disenfranchise only those who have been convicted and sentenced, and not those similarly situated to appellants. Ill. Rev. Stat., c. 46, § 3–5 (1967). Faced as we are with a constitutional question, we cannot lightly assume, with nothing in the record to support such an assumption, that Illinois has in fact precluded appellants from voting.[6] We are then left with the more traditional standards for evaluating appellants' equal protection claims.[7] Though the wide leeway allowed the States by the Fourteenth Amendment to enact legislation that appears to affect similarly situated people differently, and the presumption of statutory validity that adheres thereto, admit of no

[6] Appellants agree that the record is barren of any indication that the State might not, for instance, possibly furnish the jails with special polling booths or facilities on election day, or provide guarded transportation to the polls themselves for certain inmates, or entertain motions for temporary reductions in bail to allow some inmates to get to the polls on their own.

[7] Appellants make two additional claims here, which were asserted below and which are unrelated to their argument based on the statute and its alleged denial of equal protection. They allege first that, wholly apart from the absentee provisions, they are constitutionally entitled to cast their ballots by mail in order to avoid an impermissible consequence of pretrial detention. They argue that of all voters they are the only class forcibly restrained by the State from attending the polls in person; and they contend that they should get an *absentee* ballot only because Illinois has set up such a system, obviating any necessity to march them to the polls under armed guard—a procedure they concede would be disruptive and expensive. Appellants claim secondly that to the extent that they cannot afford the posted bail, they are being denied their right to vote solely because of their indigency, contrary to *Harper* v. *Virginia Board of Elections*, 383 U. S. 663 (1966). Since there is nothing in the record to show that appellants are in fact absolutely prohibited from voting by the State, see n. 6, *supra*, we need not reach these two contentions.

settled formula, some basic guidelines have been firmly fixed. The distinctions drawn by a challenged statute must bear some rational relationship to a legitimate state end and will be set aside as violative of the Equal Protection Clause only if based on reasons totally unrelated to the pursuit of that goal. Legislatures are presumed to have acted constitutionally even if source materials normally resorted to for ascertaining their grounds for action are otherwise silent, and their statutory classifications will be set aside only if no grounds can be conceived to justify them. See *McGowan* v. *Maryland,* 366 U. S. 420 (1961); *Kotch* v. *Board of River Port Pilot Commissioners,* 330 U. S. 552 (1947); *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61 (1911). With this much discretion, a legislature traditionally has been allowed to take reform "one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind," *Williamson* v. *Lee Optical of Oklahoma, Inc.,* 348 U. S. 483, 489 (1955); and a legislature need not run the risk of losing an entire remedial scheme simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked. See *Ozan Lumber Co.* v. *Union County National Bank,* 207 U. S. 251 (1907).

Since there is nothing to show that a judicially incapacitated, pretrial detainee is absolutely prohibited from exercising the franchise, it seems quite reasonable for Illinois' Legislature to treat differently the physically handicapped, who must, after all, present affidavits from their physicians attesting to an absolute inability to appear personally at the polls in order to qualify for an absentee ballot. Illinois could, of course, make voting easier for all concerned by extending absentee voting privileges to those in appellants' class. Its failure to do so, however, hardly seems arbitrary, particularly in view of the many other classes of Illinois citizens not covered

by the absentee provisions, for whom voting may be extremely difficult, if not practically impossible.[8]

Similarly, the different treatment accorded unsentenced inmates incarcerated within and those incarcerated without their resident counties may reflect a legislative determination that without the protection of the voting booth, local officials might be too tempted to try to influence the local vote of in-county inmates. Such a temptation with its attendant risks to prison discipline would, of course, be much less urgent with prisoners incarcerated out of state or outside their resident counties. Constitutional safeguards are not thereby offended simply because some prisoners, as a result, find voting more convenient than appellants.

We are satisfied then that appellants' challenge to the allegedly unconstitutional incompleteness of Illinois' absentee voting provisions cannot be sustained. Ironically, it is Illinois' willingness to go further than many States[9] in extending the absentee voting privileges so

---

[8] A number of identifiable groups are not yet entitled to vote absentee under Illinois legislation: those serving on juries within the county of their residence, mothers with children who cannot afford a baby sitter, persons attending ill relations within their own county, servicemen stationed in their own counties, doctors who are often called on to do emergency work, and businessmen called away from their precincts on business. On the other hand, any person in the above groups, including an unsentenced prisoner, presumably can get an absentee ballot if he is outside his resident county, ill, or observing a religious holiday.

[9] Only three other States make provision for election duties, and 14 others for religious observance. Several States have gone further than Illinois, Wisconsin making provision for jury duty, Wis. Stat. § 6.85 (1967), and Alaska, California, and Oregon making provision for inaccessibility of polls, Alaska Stat. § 15.20.010 (1962), Cal. Elections Code § 14620 (1961), Ore. Rev. Stat. §§ 253.010 (1)(a), 253.510 (1965). Maine appears to be the only State to allow the absentee ballot

as to include even those attending to election duties that has provided appellants with a basis for arguing that the provisions operate in an invidiously discriminatory fashion to deny them a more convenient method of exercising the franchise. Indeed, appellants' challenge seems to disclose not an arbitrary scheme or plan but, rather, the very opposite—a consistent and laudable state policy of adding, over a 50-year period, groups to the absentee coverage as their existence comes to the attention of the legislature. That Illinois has not gone still further, as perhaps it might, should not render void its remedial legislation, which need not, as we have stated before, "strike at all evils at the same time." *Semler* v. *Dental Examiners,* 294 U. S. 608, 610 (1935).

Accordingly, the judgment of the District Court is

*Affirmed.*

MR. JUSTICE HARLAN and MR. JUSTICE STEWART concur in the result.

---

for absence from the polls for any "sufficient" reason, Me. Rev. Stat. Ann., Tit. 21, §§ 1251, 1306 (1964).

On the other hand, all States make provisions for the Armed Forces, either expressly or impliedly. All but five States have extended the ballot to the physically disabled, and only six require absence from the State, rather than county or precinct, as a condition. See appellants' survey of state laws submitted after argument.