**Balbino CABRERA et al., Plaintiffs,**

v.

**The BOARD OF ELECTIONS OF CAMDEN COUNTY et al., Defendants.**

**Civ. A. No. 891–72.**

United States District Court,
D. New Jersey.

May 24, 1972.

Alfred F. DeMartini by James H. Klein, Camden, N. J., for plaintiffs.

George F. Kugler, Jr., Atty. Gen. of N. J. by G. Robert Wills, Deputy Atty. Gen., Morton Greenberg, Asst. Atty. Gen., for defendants.

Before GIBBONS, Circuit Judge, and FISHER and KITCHEN, District Judges.

## OPINION

GIBBONS, Circuit Judge:

The complaint in this action, filed on May 24, 1972, sought injunctive relief and class action treatment with respect to certain provisions of the New Jersey election laws. It alleged that N.J.Stat. Ann. § 19:31–6 (1964) and § 19:31–6.1 (Supp.1972) were illegal and void as violative of the Constitution of the United States and of the Federal Voting Rights Act, 42 U.S.C. § 1971 et seq. It requested the convening of a three-judge court.

The allegedly invalid statute provides, in conformity with the New Jersey Constitution, art. II, ¶ 3, that voters who have not registered by the fortieth day prior to an election may not vote in that election. A primary election was scheduled on June 6, 1972. The plaintiffs, all residents of Camden County, were:

Balbino Cabrera, who registered on May 16, 1972; Ismael Varel, who registered on May 16, 1972; Ramon Felix Cruz, who registered on May 16, 1972; Mary Ann Ries, who registered on May 11, 1972; Melanie Sadofsky, who registered on May 22, 1972; Monica Talley, who had not yet registered; Mary Peterson, who had not yet registered.

The defendants are the members of the Camden County Board of Elections. The Attorney General of New Jersey received notice of the lawsuit and appeared for the defendants. Thereafter, by agreement between counsel, the matter was continued, without any action by the district court, until after the primary election. On September 1, 1972, the plaintiffs filed a motion for the convening of a three-judge court, a motion that the action be allowed to proceed as a class action, a motion for partial summary judgment, and a motion for an injunctive order. The district court judge to whom the case was originally assigned requested Chief Judge Seitz to convene a three-judge court, and by order dated September 29, 1972, this court was appointed. The court convened on October 5, 1972.

At the hearing on October 5, the court pointed out to the attorneys for the plaintiffs that whatever right to injunctive relief any of the parties had with respect to the June 6th primary election had now become moot. There is no prayer for damages. *Compare* Nixon v. Herndon, 273 U.S. 536, 47 S.Ct. 446, 71 L.Ed. 759 (1927) *with* the instant case. The court also pointed out that on the face of the complaint the matter had become moot with respect to injunctive relief for the November 7, 1972 general election, at least as to the five plaintiffs who had registered in May of 1972 and who were therefore eligible to vote in the general election. It inquired whether any plaintiff was before the court who had a justiciable claim with respect to the November 7, 1972 election. Counsel for the plaintiffs could make no representation as to the October, 1972 status of the plaintiffs Monica Talley and Mary Peterson who, as of May 24, 1972, were unregistered. Counsel had not been in touch with those clients, apparently, since May of 1972. Since it did not appear that any party was before the court with a justiciable claim with respect to the November 7, 1972 election, the court ruled that the three-judge court would be dissolved and the case remanded to a single district court judge for further proceedings.

 To appreciate the significance of that ruling, it must be understood that the complaint posed three separate issues:

1. Selection of sites and times for registration on a racially-motivated basis.

2. Non-conformity of the New Jersey election law with the Federal Voting Rights Act.

3. Unconstitutionality of the New Jersey election law.

The first issue is clearly a single-judge issue, for the New Jersey statutes neither direct nor permit racially discriminatory site or time selection for registration. The second issue, if there is such an issue, is merely one of federal supremacy. That, too, is a single-judge issue. Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965).

██ Moreover, the pertinent sections of the Federal Voting Rights Act apply only to registration for voting for presidential and vice-presidential electors. *See* 42 U.S.C. § 1973aa–1. At the hearing on October 5, 1972, it was made clear that, as to presidential and vice-presidential electors, New Jersey is now

in full conformity with the federal statute. All persons who register in New Jersey between the fortieth day and the thirtieth day prior to the general election are given the equivalent of an absentee ballot by means of which they are permitted to vote for presidential and vice-presidential electors. They are not permitted to vote at the regular polling places, where voting machines are used, because there is no practical way of differentiating, on the voting machines, between those eligible to vote only for presidential electors and those eligible to vote for state and local offices as well. Since the residency and registration sections of the Federal Voting Rights Act deal only with the right to vote for presidential electors, and it appears that New Jersey is in full compliance, there is no supremacy issue.

That left for consideration by the three-judge court a very narrow issue. Congress set a thirty-day cut-off period for registration prior to a presidential election; the attorney for the plaintiffs conceded that the fourteenth amendment did not compel the states to adopt a shorter period. The constitutional contention, then, narrowed down to whether those persons who registered between the fortieth and the thirtieth day before the November 7, 1972 election should be permitted to vote not only for presidential electors, but also for the offices of senator, congressman, county freeholder and other county offices, and local municipal offices. Since it could not be established that anyone was before the court falling within this narrow class, and since this was the single viable three-judge court issue, the court concluded that it should dissolve, and requested the parties to prepare an order to that effect.

Before an order dissolving the three-judge court was filed, however, the attorney for the plaintiffs on October 11, 1972, returned to court with a motion to reconvene supported by an affidavit from the theretofore elusive Monica Talley. That affidavit disclosed that Miss Talley had registered on the afternoon of October 6, 1972, had been told that she could vote for the electors for president and vice-president, and that she desired to vote for senator, congressman, and local government officials.

Thereupon the three-judge court was reconvened and took testimony on October 17, 1972, on the plaintiffs' application for an injunction. At the hearing Miss Talley's attorney urged: (1) that she had standing to raise the constitutional issue of her inability to vote for offices other than presidential and vice-presidential electors; (2) that she is a proper class representative for all other voter registrants in New Jersey similarly situated; (3) that the New Jersey forty-day cut-off period for registration could not be justified by any compelling state interest; and (4) that the compelling state interest standard was applicable. For the fourth point he relied upon Dunn v. Blumstein, 405 U.S. 330, 92 S. Ct. 995, 31 L.Ed.2d 274 (1972).

The Attorney General, on the other hand, contended: (1) that class action treatment was inappropriate in view of the late date, the enormous administrative burden which any order might impose, and the inadequacy of the class representative; (2) that Miss Talley, who was a plaintiff in this action since May of 1972, but having waited to register until October 6, 1972, presented no equitable claim for injunctive relief; (3) that the state statute should be judged by the standard whether it bore any rational relationship to the purposes of the legislation, see McDonald v. Board of Election Commissioners, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969); Goosby v. Osser, 452 F.2d 39 (3d Cir. 1971); and (4) that even measured by the compelling state interest test the state's forty-day period for cutting off registration for a subsequent election must be sustained.

Were we to reach the merits we would be inclined to hold that this case involves not a selective distribution of the franchise, as in Harper v. Virginia Board of Elections, 383 U.S. 663, 86 S

Ct. 1079, 16 L.Ed.2d 169 (1966), but a regulation of the mechanics of controlling the exercise of the franchise, as in McDonald v. Board of Election Commissioners, *supra,* and Goosby v. Osser, *supra,* and requires only a rational relationship to the purposes of the legislation. We would be inclined, moreover, to find that in any event there is a compelling state interest in cutting off eligibility forty days before the election. Congress has recognized that the integrity of the electoral process requires some cut-off period. The problem of elections for presidential and vice-presidential electors is not the same as that for the remaining offices being contested in the November 7, 1972 election. With the exception of the senatorial election, each of the other offices involves districts within the state, and hence a local residency qualification. The New Jersey statutes impose a duty on election officials to compile a list of eligible voters by districts, N.J.Stat.Ann. § 19:31–18.1 (Supp.1972). These lists are made available to candidates for purposes of canvassing. They are used in some counties as mailing lists for the sample ballot. *See,* N.J.Stat.Ann. §§ 19:14–21, 25; 19:23–30, 33–35 (1964) and § 19:49–4(b) (Supp.1972). In some counties the returned sample ballots are used to compile a list of voters who should be challenged as ineligible. *See* N.J.Stat.Ann. §§ 19:14–23, 26; 19:23–32, 37; 19:32–10 (1964) and § 19:49–4(b)(1) and (2) (Supp.1972). We resist the temptation to decide the case on the merits, however.

█ First, we conclude that this action should not be maintained as a class action. *See* Rule 23(c)(1), Fed.R.Civ.P. The dismal history of the litigation set forth above convinces us that Monica Talley, the only member of the class of registrants who registered between the fortieth and thirtieth days prior to the general election, is not an adequate class representative.

█ Next, we conclude that Miss Talley's delay in registering between May 1972, when she became a party to this lawsuit, and October 6, 1972, after we had already concluded that the three-judge court should be dissolved, displays such disinterest in the subject matter as to disentitle her from invoking the equitable remedy of injunctive relief. And since a declaratory judgment would have essentially the same effect, we decline to issue a declaratory judgment as well. *See* Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971).

The application for an injunction is denied. The hearing on that application, as to Monica Talley, shall be treated as a final hearing on the merits and her case will be dismissed. Rule 65(a)(2), Fed.R.Civ.P. Since Monica Talley is the only plaintiff before us presenting a justiciable issue for a district court of three judges, we hereby direct that a final judgment be entered as to her pursuant to Rule 54(b), Fed.R.Civ.P., since we find that there is no reason for delaying the entry of judgment as to her.