Jesus Jose PORRAS et al., Plaintiffs,

v.

William E. NICHOL et al., Defendants.

No. CV75–L–45.

United States District Court,
D. Nebraska.

Dec. 12, 1975.

Richard M. Fellman, Omaha, Neb., and Harry R. Meister, Scottsbluff, Neb., for plaintiffs.

Terry R. Schaaf and Gary B. Schneider, Special Asst. Attys. Gen., for defendants.

## MEMORANDUM

URBOM, Chief Judge.

The plaintiffs, on behalf of themselves and others similarly situated, seek to have convened a three-judge court for the purpose of having declared unconstitutional two statutes and to enjoin enforcement of those statutes. Although several defendants originally were named, the plaintiffs now acknowledge that the only defendant who properly should remain is Alan J. Beerman, Secretary of State of the State of Nebraska.

The plaintiffs' request for a three-judge court is bottomed upon paragraph numbered 7 of the complaint, which states that the action:

". . . is brought by the plaintiffs . . . for the purpose of having declared unconstitutional Section 32–453 and Section 32–489 of the Revised, Reissued Statutes of Nebraska . . . because the deprivation of these votes discriminates against the less educated and illiterate voter, against those who are unable to spell . . . , and against those who . . . through mistake or inadvertence, failed to spell [Terry Carpenter's] name correctly or to write his full name or to designate the office he sought."

and upon the prayer which asks for an injunction requiring the counting of votes which have not been counted because of those statutes.

The Nebraska statutes which the complaint charges are unconstitutional read as follows:

"32–453. Ballots; how marked by voter; name written in, permitted. The elector shall proceed alone into a compartment, if there be one then unoccupied, and prepare his ballot by marking it in the following manner: He shall make a cross or other clear intelligible mark in the square to the left of every candidate for whom he desires to vote, and in case of a question to be submitted to the vote of the people, by making such a cross or mark in the square to the left of the answer he wishes to give. If the elector desires to vote for any person whose name is not printed on the ballot, except where not permitted by law, he shall write the name of the person in full in the blank space on the ballot under the proper office."

"32–489. Ballots; incorrect initials or surname of candidates; count or rejection; when authorized. If at any stage of the canvass a ballot shall be found having correctly written or printed thereon the surname of any person for any office, who shall be a candidate for such office at such election, and there shall be no other candidate for the same office having the same surname, such ballot shall be counted for such candidate, although the initial letter or letters or first name or names written or printed before his surname may not be those

properly belonging thereto; *Provided,* if there shall be two or more candidates at such election for the same office having the same surname, and such initial letter or letters or first name or names, written or printed on such ballot, do not properly belong to either of the candidates, such ballot shall be rejected and disposed of as directed in section 32–492. A candidate within the meaning of this section is any person intentionally voted for at any election."

Of § 32–453 the only portion which appears by any construction of the complaint to be under attack is that which states: ". . . he shall write the name of the person in full . . . on the ballot under the proper office." What portion of § 32–489 is claimed to be unconstitutional is not expressed. Conceivably, the attack could be on the clause which declares that any ballot will be counted if it has "correctly written or printed thereon the surname of any person for any office, who shall be a candidate for such office at such election, and there shall be no other candidate for the same office . . ." Perhaps the plaintiffs' position is that if incorrectly spelled names cannot be counted, neither can correctly spelled names.

Those two statutory provisions are to be measured against the Constitution of the United States. The complaint mentions generally the First, Fourteenth and Fifteenth Amendments. The First Amendment, insofar as it may declare anything pertinent to a voting right, provides:

"Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances."

The Fourteenth Amendment, through whose due process clause the First Amendment is a restriction on the states as well as on Congress, also states:

". . . nor shall any State . . . deny to any person within its jurisdiction the equal protection of the laws." The Fifteenth Amendment states:

"The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude."

Thus analyzed, the question is whether the statutes requiring a voter casting a write-in vote to write the name of the person in full under the proper office and permitting the counting of those ballots on which has been correctly written or printed the surname of a candidate on the ballot are in "abridging [of] the right of the people . . . to petition the Government for a redress of grievances" or a denial of "the equal protection of the laws" or a denial or abridgment of the "right . . . to vote . . . on account of race, color, or previous condition of servitude."

 When a three-judge court is requested, it is the obligation of the judge to whom the request is submitted to make a determination of whether the court has jurisdiction, including a decision as to whether there is a substantial constitutional question involved. *Ex Parte Poresky,* 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933). If no substantial constitutional question is raised, no three-judge court should be convened and the action should be dismissed. *Weir v. United States,* 310 F.2d 149 (C.A. 8th Cir. 1962); *Johns v. Redeker,* 406 F.2d 878 (C.A. 8th Cir. 1969).

"The existence of a substantial question of constitutionality must be determined by the allegations of the bill of complaint. . . . The question may be plainly unsubstantial, either because it is 'obviously without merit' or because 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy' . . . ." *Ex Parte Poresky,* 290 U.S. 30, 32, 54 S.Ct. 3, 4, 78 L.Ed. 152 (1933).

■ An action should not be dismissed under this standard lightly. The Supreme Court of the United States in *Goosby v. Osser,* 409 U.S. 512, 518, 93 S.Ct. 854, 858, 35 L.Ed.2d 36 (1973), said:

"Title 28 U.S.C. § 2281 does not require the convening of a three-judge court when the constitutional attack upon the state statutes is insubstantial. 'Constitutional insubstantiality' for this purpose has been equated with such concepts as 'essentially fictitious,' *Bailey v. Patterson,* 369 U.S. [31], at 33 [82 S.Ct. 549, 7 L.Ed.2d 512]; 'wholly insubstantial,' *ibid.*; 'obviously frivolous,' *Hannis Distilling Co. v. Baltimore,* 216 U.S. 285, 288 [, 30 S.Ct. 326, 54 L.Ed. 482] (1910); and 'obviously without merit,' *Ex Parte Poresky,* 290 U.S. 30, 32 [, 54 S.Ct. 3, 78 L.Ed. 152] (1933). The limiting words 'wholly' and 'obviously' have cogent legal significance. In the context of the effect of prior decisions upon the substantiality of constitutional claims, those words import that claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial for the purposes of 28 U.S.C. § 2281. A claim is insubstantial only if ' "its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." ' *Ex Parte Poresky, supra,* at 32 [54 S.Ct. 3], quoting from *Hannis Distilling Co. v. Baltimore, supra,* 216 U.S. at 288 [30 S.Ct. 326]; see also *Levering & Garrigues Co. v. Morrin,* 289 U.S. 103, 105–106 [53 S.Ct. 549, 77 L.Ed. 1062] (1933); *McGilvra v. Ross,* 215 U.S. 70, 80 [, 30 S.Ct. 27, 54 L.Ed. 95] (1909). . . . ."

Under that stringent standard I am persuaded that the plaintiffs in this action do not raise a substantial constitutional issue.

■ I can think of no conceivable argument that statutes requiring a voter who is casting a write-in vote to write the name of the person in full under the proper office and permitting the counting of those ballots on which there has been correctly printed or written the surname of the candidate on the ballot abridge in any manner the right of the people "to petition the Government for a redress of grievances." This case involves voting for a candidate for the state legislature, not a petitioning for a redress of grievances. Neither can the statutes be said by any construction to be bottomed upon "race, color, or previous servitude." They therefore do not violate the First or Fifteenth Amendments to the Constitution of the United States.

As to the equal protection argument under the Fourteenth Amendment, no case which I have found deals directly with the kind of statutes the plaintiffs seek to have declared invalid.

■ When a state statute denies some citizens the right to vote altogether, the court must determine whether the provisions which cause the denial are necessary to promote a compelling state interest. *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). This is because the right to vote is a fundamental political right. *Reynolds v. Sims,* 377 U.S. 533, 562, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). Accordingly, a state cannot deny the ballot to a bona fide resident merely because he is a member of the armed services, *Carrington v. Rash,* 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965), or because he is financially unable to pay a poll tax, *Harper v. Virginia Board of Elections,* 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966), or restrict school elections to persons owning or leasing property or having a child in the public schools, *Kramer v. Union Free School District No. 15,* 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969), and a substantial constitutional issue is raised by asserting that a state statute forbids " 'persons confined in a penal institution' from voting by absentee ballot," *Goosby*

*v. Osser,* 409 U.S. 512, 521, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973).

■ On the other hand, when there is no statutory classification drawn on the basis of suspect criteria, such as wealth or race, or voting qualifications, there is no denial of equal protection if the challenged statute bears some rational relationship to a legitimate state end. *McDonald v. Board of Election Commissioners of Chicago,* 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969). In *McDonald,* unsentenced inmates awaiting trial claimed that Illinois' failure to provide absentee ballots was a denial of due process. The Supreme Court denied the claim, applying the test of rational relationship to a legitimate state end. In *Goosby v. Osser,* supra, the Supreme Court distinguished *McDonald* on the basis that in *McDonald* there was no showing that Illinois would not make other provisions for voting by unsentenced inmates, so that there was no basis for saying that Illinois was denying those inmates the right to vote. The distinction appears clear: If the state statute creates a classification which denies some persons absolutely the right to vote, the stringent standard is applicable; if there is no classification which denies to some absolutely the right to vote, the more lenient test applies.

■ With respect to the Nebraska statutes under attack, the more lenient test must be used, because nothing in those statutes sets up any classification for voters and then denies that classification the right to vote. Although the plaintiffs' complaint asserts that the statutes discriminate against "the less educated, the illiterate, those who are unable to spell, and those who act or fail to act through mistake or inadvertence," the statutes in fact set up no classification or classifications of such persons. Every voter who writes in the name of a candidate is in a single classification and each one is entitled to vote.

Applying the lesser standard, then, do these statutes bear some rational relationship to a legitimate state interest? There can be no doubt about that.

■ The State of Nebraska has a legitimate interest in a method of determining quickly and easily the identity of a person for whom a vote is being cast. The statutes being challenged certainly do not declare the only reasonable method of so determining, but they do prescribe one such reasonable method.

*Lassiter v. Northampton County Board of Elections,* 360 U.S. 45, 79 S.Ct. 985, 3 L.Ed.2d 1072 (1959), held that a state constitutional provision that limited the right to vote to persons who are "able to read and write any section of the Constitution in the English language" was not a denial of equal protection, saying:

"Of course a literacy test, fair on its face, may be employed to perpetuate that discrimination which the Fifteenth Amendment was designed to uproot. No such influence is charged here. On the other hand, a literacy test may be unconstitutional on its face. In *Davis v. Schnell,* D.C., 81 F.Supp. 872, 873, affirmed 336 U.S. 933 [69 S.Ct. 749, 93 L.Ed. 1093], the test was the citizen's ability to 'understand and explain' an article of the Federal Constitution. The legislative setting of that provision and the great discretion it vested in the registrar made clear that a literacy requirement was merely a device to make racial discrimination easy. We cannot make the same inference here. The present requirement, applicable to members of all races, is that the prospective voter 'be able to read and write any section of the Constitution of North Carolina in the English language.' That seems to us to be one fair way of determining whether a person is literate, not a calculated scheme to lay springes for the citizen. Certainly we cannot condemn it on its face as a device unrelated to the desire of North Carolina to raise the standards for people of all races who cast the ballot." 360 U.S. at 53–4, 79 S.Ct. at 991.

The *Lassiter* case was considerably nearer to a denial of equal protection than the present one, because the North Carolina Constitution did prevent abso-

lutely a class of voters from voting— those who could not read or write the state constitution in English. Nonetheless, the limitation was upheld. If those who cannot read or write a state constitution in English may be totally excluded, *a fortiori* "the less educated, the illiterate, those who are unable to spell" could be similarly excluded under Nebraska statutes, but they are not.

 Under Nebraska statutes there is no bar to anyone. If a ballot carries a written name under the proper office, it will be counted, no matter how poorly educated, illiterate or incapable of spelling the voter may be. The voter may take measures to learn to write the full name of the candidate before entering the booth, irrespective of his being poorly educated or illiterate. Indeed, a voter may carry into the polling booth a sample of the name and office of the candidate, whether prepared by him or someone else, § 32–455, R.R.S.Neb.1943, and there is nothing to prevent the voter's copying or tracing the sample. As for the careless, not even the Constitution can save them.

No meritorious argument can be envisioned that invidious discrimination has been wrought against the plaintiffs. Whatever the reasons for the plaintiffs' failure to spell the candidate's name correctly or fully or to write it under the correct office, they are not the fault of the statutes.