[Civ. No. 17624. Third Dist. Mar. 28, 1979.]

CALIFORNIA CHIROPRACTIC ASSOCIATION,
Plaintiff and Appellant, v.
HUMAN RELATIONS AGENCY et al., Defendants and Respondents.

COUNSEL

Philip E. Brown, Philip Hoffman and Herbert F. Blanck for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, N. Eugene Hill, Chief Assistant Attorney General, John J. Klee, Jr., Assistant Attorney General, Thomas E. Warriner and James D. Claytor, Deputy Attorneys General, for Defendants and Respondents.

OPINION

JANES, Acting P. J.—Plaintiff, the California Chiropractic Association, appeals from summary judgment entered in favor of defendants in its action seeking declaratory and injunctive relief against defendants with respect to the administration of the Medi-Cal program. Plaintiff alleged that certain provisions of the Medi-Cal program, either as written or in their application, discriminated against plaintiff in a manner constituting a denial of equal protection. Defendants' motion for summary judgment was grounded, in some instances, on the amendment or repeal of the statutes complained of; in other instances on the presence of rational bases for discriminatory classifications existing in the challenged statutes.

This action was initiated by plaintiff on August 1, 1973, when it filed its complaint as representative of the class of duly licensed and qualified doctors of chiropractic in the state. An amended complaint was filed January 2, 1974, after defendants' demurrer to all causes of action in the first complaint had apparently been sustained. Defendants' demurrer to the first amended complaint was overruled and on May 6, 1974, defendants filed their answer.

The action remained dormant for approximately two years until June 28, 1976, when plaintiff filed a substitution of attorneys and then until April 1, 1977, when plaintiff filed an at-issue memorandum. Defendants, on August 12, moved for postponement of the trial until the validity of the suit as a class action was tested, requesting that if the class was held valid there be notification to its members. On November 4, 1977, the trial court entered its order determining the action to be validly brought as a class action and providing for notice to class members. After such

notification, the plaintiff filed a second at-issue memorandum on November 22, 1977.

On January 4, 1978, defendants filed their motion for summary judgment. Opposition was filed, the motion was argued and submitted, and on February 10 the court issued its order granting summary judgment. Judgment was entered March 1, 1978, and this appeal followed.

Plaintiff's first amended complaint, which challenged the constitutionality of specified provisions of the Medi-Cal program, set forth five causes of action, each of which attacked separate provisions of the program.

In its first cause of action, plaintiff claims (1) that section 14132 of the Welfare and Institutions Code,[1] the basic schedule of Medi-Cal benefits, discriminates against chiropractors in that only they and faith healers were limited to reimbursement for two patient visits in any one calendar month while all other providers were not so limited; and (2) that the Medi-Cal regulation set forth in title 22, California Administrative Code section 51308,[2] by limiting the chiropractic services which would be covered by the Medi-Cal program "to treatment of the spine by means of manual manipulation and such x-rays as necessary to identify the need of such treatment," prevents chiropractors from treating other conditions which they are authorized to treat under California law; and, moreover, "imposes upon a Doctor of Chiropractic the taking of x-rays under all circumstances for each and every treatment administered by him where it is common knowledge that excessive exposure to x-rays may be detrimental to a person's health."

In its third cause of action,[3] plaintiff alleges that section 14105 and regulation 51505, which limit chiropractors to reimbursement based on a maximum schedule of allowances "whereas physicians are reimbursed on an individual profile system . . . based upon what is customary for that type of service in the locale where the services are rendered" discriminate against chiropractors, since physicians may thus receive larger fees for the same or similar services as those paid to chiropractors.

---

[1]All statutory citations herein, unless otherwise specified, are to the Welfare and Institutions Code.

[2]All regulatory sections cited herein, unless otherwise specified, are to be found in title 22, California Administrative Code, and will be denominated "regulation —" to distinguish them from statutory citations.

[3]Plaintiff's second and fourth causes of action are not at issue on this appeal, thus will not be discussed.

In its fifth cause of action, plaintiff contends that section 14256 et seq., which provide for prepaid health programs, deny chiropractors equal protection in that they are either "wholly precluded from participating in prepaid health plans or if they are included within [such] plans the control being given to physicians and surgeons, their antagonists, they are allowed to participate only on a token basis . . . ."

Defendants' motion for summary judgment asserted preliminarily that plaintiff lacked standing to challenge the legislative determination regarding the services available to recipients since it was a provider, rather than a beneficiary, under the program. It was claimed that the first cause of action raised no triable fact issue since both section 14132 and regulation 51308 had been materially changed by amendment and thus were no longer susceptible to the challenge made by plaintiff. A similar claim was advanced with respect to the third cause of action, which dealt with the manner in which physicians and chiropractors were to be reimbursed for their services under the Medi-Cal program. With respect to the fifth cause of action—that chiropractors are precluded from participating in prepaid health plans—defendants challenged plaintiff's interpretation of the prepaid health plan provisions, asserting that chiropractors were not so precluded. In support of the position that the fifth cause of action raised no triable issues of fact, defendants submitted the declaration of Irvin Whitaker, Chief of the Prepaid Health Section, Department of Health Care Services of the State of California. Attached to Mr. Whitaker's declaration was a copy of the standard agreement used by the state for prepaid health plan contracts. The gist of Mr. Whitaker's declaration was that there were presently prepaid health plans operating in the state which included chiropractors among their providers.

Plaintiff contends on appeal that the trial court erred in granting defendants' motion for summary judgment as to the three causes of action. We disagree, and will affirm the judgment.

### INTRODUCTION

■ It is not disputed that the legislation which established the Medi-Cal program in California is social welfare legislation. As such, challenges to statutory provisions made on equal protection grounds must be rejected if a rational relationship can be found between the challenged

statute and some "constitutionally permissible" state purpose (*McDonald v. Board of Election* (1969) 394 U.S. 802, 808-809 [22 L.Ed.2d 739, 745, 89 S.Ct. 1404]; *Dandridge* v. *Williams* (1970) 397 U.S. 471, 485 [25 L.Ed.2d 491, 501-502, 90 S.Ct. 1153].) The rational basis test is described as follows in the *McDonald* case, *supra,* at page 809 [22 L.Ed.2d at pp. 745-746]: "The distinctions drawn by a challenged statute must bear some rational relationship to a legitimate state end and will be set aside as violative of the Equal Protection Clause only if based on reasons totally unrelated to the pursuit of that goal. Legislatures are presumed to have acted constitutionally . . . and their statutory classifications will be set aside only if no grounds can be conceived to justify them. [Citations.] With this much discretion, a legislature traditionally has been allowed to take reform 'one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind,' [citation]; And a legislature need not run the risk of losing an entire remedial scheme simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked. [Citation.]"

With specific reference to equal protection challenges to provisions of other states' Medicaid programs, the Supreme Court [in cases brought by beneficiaries under those programs] has noted that while "serious statutory questions might be presented if a state Medicaid plan excluded necessary medical treatment from its coverage, it is hardly inconsistent with the objectives of the Act for a State to refuse to fund *unnecessary*—though perhaps desirable—medical services." (*Beal* v. *Doe* (1977) 432 U.S. 438, 444-445 [53 L.Ed.2d 464, 472, 97 S.Ct. 2366].) And "[o]ur cases uniformly have accorded the States a [wide] latitude in choosing among competing demands for public funds. In *Dandridge* v. *Williams* [*supra*], despite recognition that laws and regulations allocating welfare funds involve 'the most basic economic needs of impoverished human beings, 'we held that classifications survive equal protection challenge when a 'reasonable basis' for the classification is shown." (*Maher* v. *Roe* (1977) 432 U.S. 464, 479 [53 L.Ed.2d 484, 498, 97 S.Ct. 2376].)

■ It is well settled that the rational basis test is equally applicable to challenges made to California's Medicaid program—Medi-Cal—under the California Constitution. (See *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 596, fn. 11 [96 Cal.Rptr. 601, 487 P.2d 1241]; *In re Antazo* (1970) 3 Cal.3d

100, 110 [89 Cal.Rptr. 255, 473 P.2d 999].) Accordingly, we apply this standard of review with respect to the claims asserted by plaintiff.[4]

■ The rules which guide our review of summary judgments are well settled. Summary judgment is properly granted only where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c; *Cornelison v. Kornbluth* (1975) 15 Cal.3d 590, 595-596 [125 Cal.Rptr. 557, 542 P.2d 981]; *DeSuza v. Andersack* (1976) 63 Cal.App.3d 694, 698 [133 Cal.Rptr. 920].) The question on appeal is always whether a triable issue of material fact is present.

*The First Cause of Action*

As previously noted, in this cause of action plaintiff challenged section 14132 insofar as it operated to limit only chiropractors and faith healers to two reimbursable services per calendar month, and regulation 51308 insofar as it limited the reimbursable services performed by chiropractors to manual manipulation of the spine where the need for such manipulation could be substantiated by X-ray. At the time defendants' motion for summary judgment was ruled upon, both provisions had been materially amended.

Section 14132, at the time the complaint was filed, limited a recipient to two visits per calendar month for all reimbursable services provided by providers other than physicians. The section itself expressly excluded only physicians from the two visit per month limitation, but the Department of Health Care Services (Department), by assertedly approving certain extended treatment plans, had effectually removed the limitation from the services of all mentioned in the section except for chiropractors and persons rendering treatment by prayer or healing by spiritual means. However, section 14132 has since been amended to eliminate the complained of limitation. (Stats. 1975, ch. 1005, § 3.) The section now provides that all benefits referred to therein are to be provided "subject to utilization control." Section 14133 defines the scope of permissible utilization controls and in subdivision (d) includes a "[l]imitation on number of services, which means certain services may be restricted as to number within a specified time frame." Section 14133.1

---

[4]Application of the rational basis standard, rather than the strict scrutiny theory disposes of defendants' claim, on summary judgment, that plaintiff lacked standing to assert an equal protection challenge.

provides that the determination of the utilization control to be applied is a matter for the Director of the Department. This last section excludes from utilization controls the first two services per month rendered a beneficiary. Under regulation 51304, as amended May 14, 1976, coverage for the services of optometrists, chiropractors, psychologists, physical therapists, occupational therapists, speech therapists, audiologists, podiatrists and prayer or spiritual healers, whether in-patient or out-patient, is limited to two services in any one calendar month; the only provider whose services are not so limited is the physician. (Reg. 51305.)

Plaintiff's claim that only chiropractors and faith healers are limited to reimbursement for two services per month is completely untenable at the present time. ■ Plaintiff acknowledges the change in law but argues that the section still discriminates in favor of physicians and against all other providers of health care services. Plaintiff does not address itself to the question of a rational basis existing for such discrimination, presumably because any argument advanced would necessarily be meritless. (See *Beal* v. *Doe, supra,* 432 U.S. at pp. 440-445 [53 L.Ed.2d at pp. 469-472].) Where, as in the Medi-Cal program, limited funds are available, the imposition of more onerous restrictions upon provider services for those conditions which may generally be viewed as less life-threatening than those imposed with respect to the services of providers who do frequently deal with life-threatening situations, is clearly supported by a rational basis.

Plaintiff's argument on appeal with respect to regulation 51308 has also changed. That regulation, which initially limited reimbursement for chiropractic services to those involving manipulation of the spine to treat conditions which could be substantiated by X-rays, now merely limits reimbursable chiropractic services to manipulations of the spine, subject to the utilization controls of regulation 51304, subdivision (a). Plaintiff in its initial complaint appeared to be complaining only of the requirement that its practitioners demonstrate by X-rays the need for their treatment. ■ It now contends that the limitation to manual manipulation of the spine prevents chiropractors from practicing "within the full range of their license" while allowing other health care providers to perform and be reimbursed under Medi-Cal for certain services which chiropractors are licensed to perform in California. These latter services include physical therapy and manipulation of joints other than those of the spine, which services "can be and are performed by physicians and physical therapists (see Business & Professions Code, Section 2137)."

The limitation set forth in regulation 51308 reflects the federal provision that matching funds will be provided, under the Medicaid program, only for the limited chiropractic services therein. (42 U.S.C. § 1396d (g)(2).) Plaintiff takes the position that the nonavailability of matching federal funds is inadequate justification for the "invidious and impermissible discrimination" against chiropractors. Again, the availability of federal matching funds is, on its face, a rational basis for the discriminatory classification complained of by plaintiff. No triable issue of material fact is raised.

*The Third Cause of Action*

In its third cause of action, plaintiff challenged the provisions of section 14105 and regulation 51505, which at the time the complaint was filed, limited reimbursement of chiropractors to a maximum schedule of allowances while providing for reimbursement of physicians on an individual profile system based upon the customary charge for the service rendered in the locale where it was rendered, claiming that physicians would thus receive larger fees for similar services. Since the time of the complaint, the challenged sections and regulations have been amended. Physicians as well as chiropractors are now reimbursed subject to a schedule of maximum allowances. (See §§ 14075, 14077-14080.)

Regulation 51514 sets out the schedule of reimbursement for chiropractic services. "Reimbursement for chiropractic services shall be the usual charges made to the general public not to exceed the following maximum reimbursement rates:

"Routine office visit ................................................................$5.70

"        .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    ."

Regulation 51503 provides that reimbursement for physician's services "shall be the usual charges made to the general public not to exceed the maximum reimbursement rates listed in this section for each procedure performed by a physician." Application of the formula set forth in the regulation to a routine office visit shows that the maximum reimbursement for that service is $5.52. (See Cal. Relative Value Studies (5th ed.) p. 13.) These limitations apply uniformly throughout the state.

The Relative Value Studies, published by the California Medical Association, were designed to be used by physicians in establishing their fees and as a guide for insurance carriers and government agencies. As far as we have been advised, no such similar coded scheme has been devised with respect to chiropractic services.

Contrary to plaintiff's claim in its brief, there is far more than a minimal variance between the statutory scheme originally complained of and that now existing. ■ Since both chiropractors and physicians are reimbursed for their services subject to a statewide maximum schedule of allowances, no triable issue of material fact is raised by the third cause of action.

*The Fifth Cause of Action*

■ Plaintiff's fifth and final cause of action challenged the constitutionality of that portion of the Medi-Cal law which deals with prepaid health plans (§ 14201 et seq.), contending that chiropractors are barred from participating, except on a token basis, in such plans. A prepaid health plan is defined as a health care service plan which contracts with the Department to provide services to Medi-Cal beneficiaries on a predetermined periodic rate basis. (§ 14204, 14251.) This definition includes associations of providers. The prepaid health care program was designed to provide Medi-Cal beneficiaries with a comprehensive set of services. The Legislature has expressly stated its intent that the Department encourage prepaid health plans to provide all of the health care services available to Medi-Cal beneficiaries. (§ 14304.5.) The minimum services which an approved plan must provide are set forth in section 14256, and are "(a) Physician's services; (b) Hospital outpatient services; (c) Laboratory and X-ray; (d) Prescription drugs; (e) Hospital inpatient care; [and] (f) Skilled nursing facility care."

In its complaint, plaintiff contended that the above-quoted definition of the basic scope of benefits which have to be offered by a prepaid health plan precludes chiropractors from establishing such a plan since "in order to participate in prepaid health plans under Medi-Cal [chiropractors] must become part of a prepaid health plan established by other providers of health care services and the Director of Health Care Services, who is an avowed antagonist of Doctors of Chiropractic, has not approved the participation of Doctors of Chiropractic in the prepaid health plans unless such plans provides [*sic*] that Doctors of Chiropractic not be paid

on a capitation basis, further under such permitted chiropractic participation in prepaid health plans the entire plan is thus controlled by physicians and surgeons who being avowed antagonists of Doctors of Chiropractic further exclude participation of Doctors of Chiropractic by making no referral to Doctors of Chiropractic and thereby preventing them from participating whatsoever. Thus, through the discretion given to the Director of Health Care Services and the provisions of Sections 1, 2 and 3 of Chapter 8 of Part 3 of Division 9 of the Welfare and Institutions Code of State of California, the Doctors of Chiropractic are entirely eliminated from participating in the prepaid health plans, and at most, are allowed to participate on a token basis."

It is difficult to understand what plaintiff charges as a denial of equal protection. The latent argument is that prepaid health plans can only be established by other providers of health care services, or that the Department has denied the participation of chiropractors in prepaid health plans which permit their reimbursement on a per capita basis, or that physicians are given too much control of the health care services provided beneficiaries.

Included as supporting material with defendants' motion for summary judgment was the declaration of Irvin Whitaker, Chief of the Prepaid Health Section of the Department. Whitaker, who had held that position for five years at the time he made the declaration, was "responsible for overseeing the administration of the department's prepaid health plan program." Whitaker's declaration completely refutes the claims that only providers of health care services other than chiropractors can establish a prepaid health plan, and that the Department has denied approval to any plan including chiropractors who are to be reimbursed on a per capita basis. According to Whitaker, there were 13 prepaid health plans in operation at the time of his declaration, serving approximately 120,000 recipients. The plans have various organizational structures, including corporations, partnerships, and foundations, the largest being the Consolidated Medical Health Group Plan, which serves over 50,000 recipients. This plan is a publicly held, profit-making, nonmedical corporation including among its officers several lay people. There is nothing in the legislation covering prepaid health plans which supports the claim that such plans may be established only by the providers of those services enumerated in section 14256. Similarly, reference to the standard agreement between the Department and prepaid health plans, a copy of

which was submitted by defendants in support of their motion for summary judgment, refutes plaintiff's argument.

With respect to the claimed denial of approval of any contract between the state and a prepaid health plan which provided for the reimbursement of chiropractors on a per capita basis, Mr. Whitaker stated that "to the best of [his knowledge], the department has never refused to enter into a contract with a [plan] offering the comprehensive range of services, which [plan] included chiropractors who would be paid on a capitation basis. Further, if we received such a proposal today, i.e., one from a comprehensive [plan], and it met all the requirements of law, we would consider entering into such a contract."

Plaintiff sought to rebut Mr. Whitaker's statement by submitting the declaration of Philip E. Brown, one of plaintiff's attorneys and also a licensed chiropractor. Brown, from 1969 until the time of his declaration, was general counsel for the California Chiropractic Association Health Service Foundation, and from 1962 until the time of the declaration was the administrator of that foundation. His declaration established his familiarity with the various prepaid health plans operating as participants in the Medi-Cal program. He stated "I have been consulted by many individual [chiropractors] who have been approached to participate in such plans. None of said doctors who consulted me were offered participation in said plans on a capitation basis." He further stated that he knew of no prepaid health plan operating under Medi-Cal in which chiropractors participated on a per capita basis.

It is apparent that Brown's declaration falls far short of contravening Whitaker's statement. While each statement is phrased in terms of the best knowledge of the declarant, it must be remembered that Whitaker spoke from the position of the Department's representative charged with overseeing the administration of the program. Not only does Brown's statement fail to support the claimed denial of approval, but Whitaker's categorically establishes that there was and is no such discriminatory practice. Moreover, it should be noted that Dr. Earl Brian, the director who allegedly disapproved any prepaid health plans which included chiropractors paid on a capitation basis, and whose actions were allegedly based on antagonism towards chiropractors, had been replaced as director of the Department even before the filing of plaintiff's com-

plaint.[5] Both the initial and the amended complaint named Dr. Brian as a party defendant.

The remaining implicit challenge to the prepaid health care legislation, specifically section 14256, is that the statute is void since it requires a minimum participation by physicians but does not similarly require that chiropractors participate in a plan in order for it to be approved. If this challenge is in fact presented by the complaint—and we have great difficulty in so interpreting it—the test to be applied is whether any rational basis exists for such discrimination. Once again, the legislation meets that test. Plaintiff presents neither authority nor argument in support of the proposition that the exclusion of chiropractic services from the list of basic health care services required of a prepaid health plan is unreasonable. ■ It is well settled that the Legislature, in enacting social welfare legislation, need not provide that every benefit be available to recipients; any reasonable choice made among competing demands for public funds will be upheld. (See *Dandridge* v. *Williams, supra,* 397 U.S. 471, 484-485 [25 L.Ed.2d 491, 501-502].)

The judgment is affirmed.

Evans, J., and Reynoso, J., concurred.

---

[5]Submitted by defendants in support of their motion for summary judgment was a portion of Dr. Brian's deposition in which he stated that his term as director started April 1, 1970, and terminated June 30, 1972. The initial complaint in this action was filed August 1, 1973, and the first amended complaint January 2, 1974. Dr. Brian did, however, serve the state as Secretary of Health and Welfare from July 1, 1972, until January 31, 1974.